THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHOLAS S. CASTIGILIA, Defendant-Appellant.

Second District    No. 2—07—1075

Opinion filed September 11, 2009.

Thomas A. Lilien and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Lawrence M. Bauer, and Joan M. Kripke, all of State's Atttorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Following a stipulated bench trial in the circuit court of Du Page County, defendant, Nicholas S. Castigilia, was found guilty of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2006)) and was sentenced to a 2-year term of probation and 150 days in the county jail with credit for 75 days served. The court also imposed a $500 controlled substance assessment (see 720 ILCS 570/411.2 (West 2006)). On appeal, defendant argues that the trial court erred in denying his motion to quash his arrest and suppress evidence. Defendant alternatively argues that he is entitled to a $375 credit toward the controlled substance assessment. We affirm defendant's conviction, but modify the judgment to award defendant the $375 credit he seeks.

At the hearing on defendant's motion to quash and suppress, Addison police officer Alaimo (whose first name does not appear in the record) testified that at about 1 a.m. on July 24, 2007, he was in uniform, sitting in a marked squad car parked at the intersection of Army Trail Road and Route 53. Alaimo observed a vehicle pull into a gas station on the other side of Army Trail Road. Defendant exited the vehicle. According to Alaimo, defendant appeared to use an ATM. Defendant then reentered the vehicle, and Alaimo observed "some type of transaction" take place. Defendant exited the vehicle again, crossed Army Trail Road, and began walking north along Route 53. Alaimo "drove around onto Route 53 and waited for [defendant] to ap-

proach [Alaimo's] vehicle." Alaimo testified that he performed a *"Terry* stop" (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) of defendant after defendant walked past his vehicle. Alaimo further testified, "I exited the vehicle, asked [defendant] where he was going, if he had any ID on him." Defendant stopped and replied that he was walking to a friend's house and did not have any identification with him. Alaimo then asked defendant "if he had anything illegal on him, if I could—if he wouldn't mind me searching him." Defendant stated that he had some drugs in his right hand.

Acknowledging Alaimo's testimony that he had conducted a *Terry* stop, the trial court stressed that it was the court's role to determine whether there had been a seizure within the meaning of the fourth amendment. Concluding that defendant had not been seized when he revealed that he had drugs in his possession, the trial court denied the motion to quash and suppress. Despite Alaimo's characterization of the encounter as a *Terry* stop, we agree with the trial court that no seizure occurred.

Not all encounters between the police and private citizens constitute seizures. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). It is well established that "[a] person is seized when, by means of physical force or a show of authority, the person's freedom of movement is restrained." *People v. Cosby*, 231 Ill. 2d 262, 273 (2008), citing *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). "Examples of circumstances that might indicate a seizure \*\*\* would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. On the other hand, consensual encounters—those that involve no coercion or detention—do not implicate fourth amendment interests. *Luedemann*, 222 Ill. 2d at 544.

■ Defendant contends that the list of circumstances set forth in *Mendenhall* is not exhaustive. He argues that, in this case, other circumstances "were indicative of police coercion," thereby establishing a seizure. Citing our decision in *People v. Ocampo*, 377 Ill. App. 3d 150 (2007), defendant notes that Alaimo emerged from a marked police car and was in uniform when he "accosted" defendant. In *Ocampo*, which involved an encounter between plainclothes officers and an individual suspected of engaging in a drug transaction, the State argued that the officers' attire suggested that the encounter was not a seizure. We stated:

> "[T]he primary effect of a police uniform is that it identifies its wearer as a police officer, and, in that sense, where an officer in plain clothes shows his or her police badge or otherwise identifies him or herself as a police officer, we do not discern any coercive difference from an officer in uniform, based on attire. However, an officer wearing a police uniform may create an air of formality or may project greater authority than would an officer in plain clothes. Thus, we are not prepared to hold, as a matter of law, that there is no difference between the coercive effect of fully uniformed police and that of plainclothes police, because police wear uniforms at least partly for the purpose of creating an atmosphere of comfort for the innocent and trepidation for the guilty." *Ocampo*, 377 Ill. App. 3d at 159.

Although an officer's attire is, perhaps, a relevant factor that may occasionally tip the balance toward or away from a finding that a particular encounter is a seizure, *Ocampo* hardly suggests that attire is a paramount consideration or even a particularly significant one. To be sure, a police uniform is a vivid reminder of the authority a police officer holds. However, it is the exercise (or apparent exercise) of that authority—not merely its existence—that may result in an encounter becoming a seizure. Thus, a confrontation with a police officer is not a seizure on the basis that the officer's authority produces an inherent pressure to cooperate. Rather, as the leading commentator on the fourth amendment has suggested, an encounter between a police officer and a civilian "is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse." 4 W. LaFave, Search & Seizure §9.4(a), at 425 (4th ed. 2004).

This test, of course, assumes belief in a sort of legal fiction. As defendant notes, "in a truly consensual encounter with a police officer, one would not expect to have to display one's identification to the officer, or be asked to submit to a search." To the contrary, it has been stated that "[n]o fourth amendment violation occurs when an officer approaches a person in a public place *** and asks if he is willing to answer some questions and provide identification." *People v. Evans*, 296 Ill. App. 3d 1, 9 (1997), citing *Mendenhall*, 446 U.S. at 555, 64 L. Ed. 2d at 510, 100 S. Ct. at 1877, and *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983); accord *People v. Dent*, 343 Ill. App. 3d 567, 578 (2003) ("a police officer, in most cases, does not violate the fourth amendment *** by approaching an individual and questioning him or asking for identification," but this is true only if the individual remains free to disregard the questions and walk away). Similarly, "[a] request for consent to search does not

convert a consensual encounter into a seizure 'as long as the police do not convey a message that compliance with their request is required.' " 4 W. LaFave, Search & Seizure §9.4(a), at 427 (4th ed. 2004), quoting *Florida v. Bostick*, 501 U.S. 429, 435, 115 L. Ed. 2d 389, 398-99, 111 S. Ct. 2382, 2386 (1991); see also *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) ("the Supreme Court has held repeatedly that police may approach persons and ask questions or seek their permission to search, provided that the officers do not imply that answers or consent are obligatory").

Defendant also points out that it was late at night and he was alone when he encountered Alaimo. He cites no authority for the idea that a late-night encounter (when the defendant is otherwise awake and about) is more likely to be a seizure than a daytime encounter. For the proposition that his solitude rendered the encounter more coercive, defendant relies on our decision in *Ocampo*. In *Ocampo*, the defendant argued that he had been seized when a police officer drove to the gas station alley where the defendant was standing, parked about 50 feet in front of the defendant (but not in a manner that would block the defendant's path), and " 'had [his] badge out in [his] hand and [he] told [the defendant] [he] was a police officer and [he] needed to talk to him.' " *Ocampo*, 377 Ill. App. 3d at 153. During the encounter, as many as three police officers were present with the defendant. *Ocampo*, 377 Ill. App. 3d at 157. Based largely on the officer's telling the defendant that he "needed" to talk to him, we concluded that a seizure had occurred. We further observed:

> "[T]he context of [the officer's] introductory comments to defendant increases their coercive nature. *** [The officer's] conduct would convey to a reasonable person in the same position that the approaching police officer had arrived to question him specifically and at that moment. See *United States v. Ward*, 961 F.2d 1526, 1532 (10th Cir. 1992) ('we believe that a reasonable innocent person who is alone when approached by law enforcement officers is more likely to feel that he or she was the specific object of the officers' inquiry'), *overruled on other grounds by United States v. Little*, 18 F.3d 1499, 1504 (10th Cir. 1994)." *Ocampo*, 377 Ill. App. 3d at 160.

Defendant interprets this passage as meaning that a suspect's being alone at the time he meets police makes the encounter more coercive and thus more likely to constitute a seizure. However, the essence of the above-quoted language from *Ocampo* was not that the encounter was more likely to be a seizure because the defendant was alone, but rather that it was more likely to be a seizure because of the manner of the police approach: the officer's driving to a back alley, im-

mediately approaching the defendant with badge drawn, and telling the defendant that they needed to talk "would convey to a reasonable person in the same position that the approaching police officer had arrived to question him specifically and at that moment." *Ocampo*, 377 Ill. App. 3d at 160. The remarkable aspect of *Ocampo* was that the police had obviously, and relatively urgently, sought the defendant out, not that the defendant was alone when the police approached. *Ocampo* cited *Ward* for that reason, and not for the proposition that a defendant's being alone outside makes an encounter with police more coercive.[1]

Unlike *Ocampo*, where several officers more or less set upon the defendant, in this case it was defendant who walked toward Alaimo's vehicle. Defendant did not see Alaimo approach him; Alaimo made his presence known only after defendant walked past. In addition, Alaimo did not initiate the conversation by stating that he "needed" to talk to defendant; rather, he asked defendant where he was going and whether he had any identification. There is no evidence that Alaimo's words or tone of voice indicated that defendant might be compelled to answer. Even though defendant was walking by himself late at night when Alaimo addressed him, a reasonable person in defendant's position would not have perceived Alaimo's words and actions as a demand for cooperation.

Finally, we note that two cases defendant cites, *People v. Thomas*, 198 Ill. 2d 103 (2001), and *People v. Anthony*, 198 Ill. 2d 194 (2001), are inapposite. In *Thomas*, a police officer positioned his squad car in front of a bicyclist—the defendant—obstructing his path. The defendant rode around the squad car, but the *Thomas* court agreed with the appellate court's observation that, " '[h]ad the defendant stopped when his path was obstructed, had he submitted to [the officer's] show of authority, a seizure of the kind offensive to our constitution would have occurred.' " *Thomas*, 198 Ill. 2d at 112, quoting *People v. Thomas*, 315 Ill. App. 3d 849, 857 (2000). Here, as noted, Alaimo did not physically block defendant's path; he asked defendant where he was going, whether he had any identification, and whether he would consent to a search. As discussed, such questions do not amount to a seizure. This is true even if the questions cause a

---

[1]The focus of that portion of the decision in *Ward* was indeed the idea that the defendant there felt more coercion because he was alone, but the defendant in *Ward* was "alone" in more than the sense that he was without companions: he was alone in the more important sense that he was isolated from others (he was encountered in a "roomette" in a passenger train). See *Ward*, 961 F.2d at 1531-32. Those circumstances are not present here.

pedestrian to pause his or her travels to listen to the questions and answer them (if he or she so elects). *United States v. Broomfield*, 417 F.3d 654, 656 (7th Cir. 2005). According to defendant, Alaimo's questions not only caused defendant to stop walking, but caused him to "change his course of direction." The difference is trivial, however. *Anthony* is inapposite because the only issue our supreme court addressed was whether the defendant had consented to a search.

We therefore conclude that the trial court properly denied defendant's motion to quash and suppress.

■ Defendant next contends that, because he spent 75 days in custody before sentencing, he is entitled to a credit of $375 toward the $500 controlled substance assessment. Section 110—14(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110—14(a) (West 2006)) provides that "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." The credit applies to controlled substance assessments. *People v. Youngblood*, 365 Ill. App. 3d 210, 215 (2006). The State agrees that defendant is entitled to the credit. Accordingly, we modify the judgment to reflect that defendant is entitled to a $375 credit against the $500 controlled substance assessment.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed as modified.

Affirmed as modified.

BOWMAN and HUTCHINSON, JJ., concur.