2015 IL App (4th) 130072

NO. 4-13-0072

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| TREVON M. LAKE, | ) | No. 12CF265 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Holder White and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1        In June 2012, the State charged defendant, Trevon M. Lake, in part, with (1) aggravated use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2010)) and (2) defacing identification marks of a firearm (720 ILCS 5/24-5(b) (West 2010)).  Defendant later filed a motion to suppress the gun police seized, arguing that the police search of him was unreasonable under the fourth amendment to the United States Constitution.  U.S. Const., amend. IV.

¶ 2        Following a November 2012 hearing, the trial court denied defendant's motion to suppress.  At a stipulated bench trial conducted later that month, the court found defendant guilty of both charges.  In December 2012, the court sentenced defendant to time served (187 days in jail) and probation for 24 months.

¶ 3        Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress evidence and (2) his conviction for aggravated use of a weapon under section 24-

1.6(a)(1), (a)(3)(I) of the Criminal Code of 1961 is unconstitutional.  We disagree and affirm.

¶ 4                                I. BACKGROUND

¶ 5            A. The State's Charges and Defendant's Motion To Suppress Evidence

¶ 6            In June 2012, a police officer searched defendant—who was 17 years old—and discovered a gun with a defaced serial number.  The State later charged defendant with (1) two counts of aggravated use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(C); (a)(1), (a)(3)(I) (West 2010)) (counts I and II, respectively) and (2) defacing identification marks of a firearm (720 ILCS 5/24-5(b) (West 2010)) (count III).

¶ 7            In September 2012, defendant filed a "motion to quash arrest and suppress evidence."  See *People v. Ramirez*, 2013 IL App (4th) 121153, ¶ 57, 996 N.E.2d 1227 (saying defendants should stop filing motions to "quash arrest" because they make no sense and add nothing to achieving the intended goal of suppressing evidence).  Defendant sought to exclude the gun and any associated evidence, arguing that the search of his person was unreasonable under the fourth amendment because the police lacked sufficient justification to stop and question him and then seize the gun.

¶ 8            B. The Hearing on Defendant's Motion To Suppress

¶ 9            At a November 2012 hearing on defendant's motion to suppress, defendant presented the following evidence.

¶ 10            Sergeant Terry McCord of the Danville police department testified that shortly after midnight on June 15, 2012, he responded to a call reporting gunshots at the Fair Oaks public housing complex, which is managed by the Danville Housing Authority.  Although McCord initially patrolled the property in his marked squad car, he left his vehicle, traveled on foot, and later observed three men in front of a building.  One of the three men—later identified as defend-

ant—caught McCord's attention because he walked back and forth three times, looking in various directions as he did so, which gave McCord the impression that the man was a "lookout." McCord, who did not know defendant at the time he observed the three individuals, characterized the shifting movements as "suspicious," adding that "[w]hat I witnessed from the subject was not a normal *** reaction in my 15 years' experience."

¶ 11 The "lookout" (defendant) eventually walked "down the street," away from the two men as he listened to loud music playing from an electronic device. Unbeknownst to defendant, McCord followed, closing the 20-foot distance between them. McCord then tapped defendant's shoulder from behind, which startled and scared him. When defendant turned his head and saw McCord behind him, McCord moved in front of defendant, identified himself, and asked what defendant was doing. Defendant responded that he was walking to his apartment, which was a few doors away, and he wanted to go home. McCord then asked defendant to identify himself, and defendant responded, "Trevon Lake." At that moment, McCord recalled information provided by another officer not more than six months earlier that Trevon Lake was known to carry a gun. McCord looked down and observed a four-inch bulge at defendant's waist area. McCord then conducted a "pat down" search of that bulge and seized the gun at issue.

¶ 12 McCord testified that pursuant to a written agreement between the Danville Housing Authority and the Danville police department, police patrolling the apartment complex are supposed to determine that people on housing authority property either reside there or are permitted to be on the premises. McCord explained the following standard procedure police use under that agreement:

> "[Police] [u]sually stop [people], *** ask for their name, [and] ask
>
> their purpose [for] being on the property. We can check to see if

they actually live there because [police dispatchers have] a residents' list for Fair Oaks. If they're not on the bar list and they do live there, obviously they're allowed to go *** wherever they're going. If they're not on the bar list and they don't live there, they're asked to leave the property or go wherever they're supposed to be visiting or whatever they're supposed to be doing."

McCord testified that police dispatchers have access to a listing of over 600 people who are barred from the Fair Oaks property. If police question an individual who is on the barred list, that person is asked to leave the premises. McCord stated that he stopped defendant to ask (1) why he was on the property and (2) his name to determine his status in accordance with the aforementioned procedure.

¶ 13    In addition to ensuring his own safety, McCord stated that he searched defendant for the following reasons:

"[Defendant] was patted down because of the totality of the circumstances; based on the area that I was in, the high-crime/ high-drug area[;] based on [defendant's] action and what I believed he could be possibly doing[;] based on the fact that I asked [defendant for] his name *** and I had information *** that [defendant] was known to carry guns. I then looked down [at] his waist area and at that point was able to see what I believed to be a bulge *** in his waist."

¶ 14    Defendant's testimony regarding his June 15, 2012, encounter with McCord was consistent with McCord's account. Defendant added that he did not feel free to leave during his

encounter with McCord.

¶ 15 Thereafter, the trial court denied defendant's motion to suppress evidence.

¶ 16 C. Defendant's Trial

¶ 17 Following a November 2012 stipulated bench trial, the trial court found defendant (1) not guilty of count I and (2) guilty of counts II and III. The stipulated evidence showed that the gun seized from defendant had its identification marks defaced. In December 2012, the court sentenced defendant as previously noted.

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 A. Defendant's Fourth-Amendment Claim

¶ 21 Defendant argues that the trial court erred by denying his motion to suppress evidence. Specifically, defendant contends that suppression of the firearm is appropriate because the police lacked sufficient justification to seize and question him. In this regard, defendant asserts that he was seized because McCord (1) believed his innocent actions were suspicious; (2) approached him from behind and tapped him on his shoulder, which caused him to stop and submit to McCord's authority as a police officer; and (3) blocked his path. We disagree that McCord's encounter with defendant violated the fourth amendment.

¶ 22 1. *The Standard of Review*

¶ 23 When reviewing a trial court's decision whether to grant or deny a motion to suppress evidence, we apply a bifurcated standard of review. *People v. Harper*, 2013 IL App (4th) 130146, ¶ 10, 1 N.E.3d 654. "We review a trial court's factual findings using a manifest-weight-of-the-evidence standard but apply a *de novo* standard of review to the ultimate question of whether the evidence should be suppressed." *Id*.

¶ 24                     2. *Reasonableness Under the Fourth Amendment*

¶ 25          The fourth amendment to the United States Constitution prohibits "unreasonable searches and seizures."  U.S. Const., amend. IV.  Similarly, the Illinois Constitution guarantees the people "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, seizures, [and] invasions of privacy."  Ill. Const. 1970, art. I, § 6.  "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' "  *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

¶ 26                     3. *The Encounter Between Defendant and McCord*

¶ 27                          a. McCord's Subjective Perceptions

¶ 28          Defendant contends that he was seized because McCord believed his innocent actions were suspicious.  We reject defendant's assertion because, as we have noted, the touchstone of the fourth amendment is reasonableness, which is measured objectively by examining the totality of the circumstances surrounding a police officer's encounter with a citizen.  *People v. McDonough*, 239 Ill. 2d 260, 272, 940 N.E.2d 1100, 1109 (2010).  "The objective nature of the test also means that whether an encounter has become a seizure depends on the officer's objective behavior, not any subjective suspicion of criminal activity."  (Internal quotation marks omitted.)  4 Wayne R. LaFave, Search and Seizure § 9.4(a), at 568 (5th ed. 2012).  Given this objective focus, we need not concern ourselves with any suspicions McCord may have had about defendant as he approached, intending to engage him in conversation.

¶ 29          Instead, "[t]he critical factor is whether the policeman, even if making inquiries a

private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens." *Id*. § 9.4(a), at 582-83. "[A]n encounter between a police officer and a civilian 'is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse.' " *People v. Castigilia*, 394 Ill. App. 3d 355, 358, 915 N.E.2d 809, 812 (2009) (quoting 4 Wayne R. LaFave, Search and Seizure § 9.4(a), at 425 (4th ed. 2004)). With these established principles in mind, we turn to the encounter between McCord and defendant.

¶ 30                    b. McCord's Tap of Defendant's Shoulder

¶ 31        Defendant contends that he was seized the moment McCord approached him from behind and tapped him on his shoulder, which caused him to stop and submit to McCord's authority as a police officer. We disagree that McCord's tap demonstrated authority sufficient to constitute an unreasonable seizure under the fourth amendment.

¶ 32        The undisputed testimony showed that in the early morning hours of June 15, 2012, defendant was walking toward his home while playing loud music. At that time and unbeknownst to defendant, McCord, who did not know defendant, was attempting to reach defendant to question him about his status on housing authority property. Contrary to defendant's characterization, we do not find it unreasonable—under the circumstances presented here—that a police officer would employ the minimally intrusive method of tapping a person on the shoulder to gain that person's attention, which was clearly McCord's intent. See LaFave, *supra* § 9.4(a), at 585 ("Even physical contact is acceptable if it is consensual, a normal means of attracting a person's attention[,] or obviously serves some nonseizure purpose." (Internal quotation marks omitted.)). Contrary to defendant's characterization, McCord's physical touch of defendant's shoulder is one of many nonoffensive methods our culture and society accept as a measure of common

- 7 -

courtesy to attract another person's attention. Accordingly, we conclude that McCord's physical contact with defendant was not a demonstration of police authority indicative of a seizure but was, instead, a socially accepted method of initiating the encounter that ensued.

¶ 33                    c. McCord's Location During the Encounter

¶ 34        Defendant contends that he was seized when McCord blocked his path down the street and began asking him questions. We disagree.

¶ 35        "It is well settled that not every encounter between the police and a private citizen results in a seizure." *People v. Luedemann*, 222 Ill. 2d 530, 544, 857 N.E.2d 187, 196 (2006). Police-citizen encounters are divided into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, commonly referred to as "*Terry* stops," which must be supported by reasonable, articulable suspicion of criminal activity; and (3) consensual encounters, which involve no coercion or detention and thus do not implicate the fourth amendment. *Id.* "[A] seizure does not occur simply because a law enforcement officer approaches an individual and puts questions to that person if he or she is willing to listen." *People v. Gherna*, 203 Ill. 2d 165, 178, 784 N.E.2d 799, 807 (2003). "So long as a reasonable person would feel free to disregard the police and go about his business, *** the encounter is consensual and no reasonable suspicion is required." (Internal quotation marks omitted.) *Id.*

¶ 36        "For purposes of the fourth amendment, an individual is 'seized' when an officer ' "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." ' " *Luedemann*, 222 Ill. 2d at 550, 857 N.E.2d at 199 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991), quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Based on the facts presented, the relevant inquiry in determining whether a seizure occurred is whether a reasonable person in defendant's position would have believed he was free to leave under the circumstances

- 8 -

presented. *Id.*, 857 N.E.2d at 200.

¶ 37　　　　To assist in determining whether a reasonable person believes he or she is not free to leave, courts use the following four indicators, commonly known as the *Mendenhall* factors: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). See *People v. Leach*, 2011 IL App (4th) 100542, ¶¶ 8-9, 959 N.E.2d 680 (explaining the origin and adoption of the *Mendenhall* factors).

¶ 38　　　　In support of his assertion that he was seized, defendant relies on *People v. Thomas*, 198 Ill. 2d 103, 759 N.E.2d 899 (2001). In *Thomas*, a police officer attempted to stop the defendant, who was riding a bicycle, by placing his squad car in front of the defendant's path. *Id.* at 106, 759 N.E.2d at 901. Before reaching the squad car, the defendant abruptly turned into an alley and attempted to leave the area. *Id.* Following a short chase, police arrested the defendant, conducted a search of his person, and seized cocaine. *Id.* at 107, 759 N.E.2d at 901. Although the *Thomas* court affirmed the Fifth District's decision to reverse the trial court's suppression of the drugs police seized, the *Thomas* court agreed with the Fifth District's analysis that, under the particular facts of that case, " '[h]ad the defendant stopped when his path was obstructed, had he submitted to [the] Officer['s] show of authority, a seizure of the kind offensive to our constitution would have occurred.' " *Id.* at 112, 759 N.E.2d at 904.

¶ 39　　　　Defendant claims that *Thomas* "perfectly applies" to the facts of this case because McCord (1) "wanted to stop [him]" and (2) "blocked his path." Defendant posits that he submitted to McCord's show of authority, which constituted a seizure. Defendant's claim, however, essentially equates a police officer's decision to use his squad car to intentionally block the path of

a bicycle with McCord's decision to initiate an encounter with another person by using the commonly accepted social convention of tapping a person's shoulder to attract his attention and then facing that person to engage in conversation. We are not persuaded that *Thomas* supports defendant's claims, and we do not agree with his characterization of his encounter with McCord.

¶ 40 In this case, the testimony defendant presented at the hearing on the motion to suppress evidence revealed that after obtaining defendant's attention by tapping defendant's shoulder, McCord stood facing defendant and, in a conversational tone, asked him to explain his purpose and, thereafter, to identify himself. Defendant willingly answered McCord's questions. Although defendant claims that in doing so, he submitted to McCord's show of authority, we reject any notion that *up to that moment* the exchange between defendant and McCord was anything other than a consensual encounter that did not implicate the fourth amendment. See *People v. Woods*, 2013 IL App (4th) 120372, ¶ 27, 995 N.E.2d 539 (the fourth amendment does not apply to consensual encounters). Indeed, although most citizens will respond to inquiries posed by the police, the fact that they do so without being told that they are free not to respond does not change the consensual nature of that police contact. LaFave, *supra* § 9.4(a), at 567.

¶ 41 In *Bostick*, 501 U.S. at 434-35, the Supreme Court explained that the police may do more than merely ask questions without turning the encounter into a seizure, as follows:

> "We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [citations]; ask to examine the individual's identification [citations]; and request consent to search his or her luggage [citations]—as long as the police do not convey a message that compliance with their requests is required."

¶ 42    The undisputed record showed that McCord approached defendant in a professional, nonoffensive manner, posing appropriate questions that defendant willingly answered. With the exception of McCord's initial tap of defendant's shoulder, none of the *Mendenhall* factors indicative of a seizure are present on this record. McCord was alone during the encounter, did not use physical force to impede defendant's gait, did not brandish his weapon, and did not otherwise convey—either verbally or nonverbally—that his presence mandated defendant's compliance. See *Mendenhall*, 446 U.S. at 555 ("In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.").

¶ 43    The consensual nature of the encounter, however, changed the moment defendant identified himself to McCord. At that point, McCord, having previously received information that defendant was known to carry a gun, suspected defendant possessed a gun when he observed a bulge at defendant's waist. Thus, McCord then had a reasonable basis to conduct a pat-down search of the bulge in defendant's waist area. See *People v. Allen*, 409 Ill. App. 3d 1058, 1074, 950 N.E.2d 1164, 1180 (2011) (a pat-down search is permissible when an officer has reason to believe the detainee is armed and dangerous).

¶ 44    As we have already noted, the overarching standard of the fourth amendment is reasonableness, which is measured in objective terms by examining the totality of the circumstances. *People v. Ward*, 371 Ill. App. 3d 382, 407, 862 N.E.2d 1102, 1128 (2007). Applying that established standard objectively to the aforementioned facts, we conclude that McCord acted reasonably during his encounter with defendant. In so concluding, we note that our totality-of-the-circumstances analysis also includes the existence of the agreement between the Danville Housing Authority and Danville police department, which promoted the legitimate government

interest of increased safety and security for residents of the Fair Oaks public housing community. The procedure McCord described and employed to satisfy the goals of that agreement is an additional circumstance that supports our conclusion that McCord acted reasonably regarding his encounter with defendant and did not violate the fourth amendment. Accordingly, we reject defendant's challenge to the trial court's denial of his November 2012 motion to suppress the firearm McCord seized from defendant.

¶ 45                                    B. Defendant's Constitutional Claim

¶ 46            Defendant argues that his conviction for aggravated use of a weapon under section 24-1.6(a)(1), (a)(3)(I) of the Criminal Code of 1961 is unconstitutional. Specifically, defendant contends that because section 24-1.6(a)(1), (a)(3)(I) cannot be severed from related subsections that have been declared unconstitutional, section 24-1.6(a)(1), (a)(3)(I) of the Criminal Code of 1961 is also unconstitutional. We disagree.

¶ 47                                    1. *The Standard of Review*

¶ 48            Constitutional challenges to statutory provisions carry the heavy burden of successfully rebutting the strong presumption in favor of constitutionality. *People v. Patterson*, 2014 IL 115102, ¶ 90. "[C]ourts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of its validity." *Id*. We review *de novo* a claim challenging the constitutionality of a statute. *Id*.

¶ 49                                    2. *The Pertinent Portions of the Statute at Issue*

¶ 50            Section 24-1.6 of the Criminal Code of 1961 provides, in pertinent part, as follows:

             "(a) A person commits the offense of aggravated unlawful

             use of a weapon when he or she knowingly:

- 12 -

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, *** any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

* * *

(I) the person possessing the weapon was under 21 years of age and in possession of a handgun ***.

* * *

(d) Sentence

(1) Aggravated unlawful use of a weapon is a Class 4 felony[.]"  720 ILCS 5/24-1.6 (West 2010).

¶ 51                    3. *The Supreme Court's Decision in Aguilar*

¶ 52          In *People v. Aguilar*, 2013 IL 112116, ¶¶ 1, 21, 2 N.E.3d 321, the supreme court held that section 24-1.6(a)(1), (a)(3)(A), (d) of the aggravated use of a weapons statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008))—which encompasses the Class 4 form of that offense—violated the "right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II)."  The *Aguilar* court found persuasive the Seventh Circuit Court of Appeals' decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), in which the Seventh Circuit—after considering the "broad principles" espoused by the United States Supreme Court in *District of Columbia v. Heller*, 544 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010)—held that "Illinois' 'flat ban on carrying ready-to-use-guns outside the home,' as embodied in the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d), is unconstitutional on its face."  *Aguilar*, 2013 IL 112116, ¶ 19, 2 N.E.3d 321 (quoting *Moore*, 702 F.3d at 940).  In so holding, the *Aguilar* court specified that its decision was limited to the Class 4 form of the offense and did not either expressly or implicitly render unconstitutional any other section or subsection of the statute.  *Id*. ¶ 22 n.3, 2 N.E.3d 321.

¶ 53          The *Aguilar* court, however, rejected the defendant's argument urging reversal of his conviction under section 24-3.1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/24-3.1(a)(1) (West 2008)), which prohibited a person under 18 years from possessing a concealed firearm upon his person. *Aguilar*, 2013 IL 112116, ¶¶ 25-26, 2 N.E.3d 321.  Noting that the second

amendment does not provide a person the unconstrained right to possess any weapon in any manner for whatever purpose, the *Aguilar* court expressed its agreement with the following cases, which undertook a "thorough historical examination" of laws that prohibited the possession of firearms by minors:

> "*National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, Explosives*, 700 F.3d 185, 204 (5th Cir. 2012) (concluding that '[m]odern restrictions on the ability of persons under 21 to purchase handguns—and the ability of persons under 18 to possess handguns—seem, to us, to be firmly historically rooted'); *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009) (concluding that 'the right to keep arms in the founding period did not extend to juveniles'); *Powell v. Tompkins*, [926 F. Supp. 2d 367, 387-90 (D. Mass. 2013)] (holding that a Massachusetts law proscribing the carry of firearms by persons under the age of 21 'comports with the Second Amendment and imposes no burden' on the right to keep and bear arms)." *Id.* ¶ 27, 2 N.E.3d 321.

¶ 54                            4. *Defendant's Severability Claim*

¶ 55        Defendant posits that his conviction under section 24-1.6(a)(1), (a)(3)(I) required the State to prove the following two elements: (1) that he possessed a firearm outside of his home, property, or place of business; and (2) at the time he possessed the firearm, he was under 21 years old and was not engaged in certain enumerated lawful activity. Noting that *Aguilar* held that the first element was a constitutionally protected act, defendant claims that "it is clear that both elements here are 'so mutually connected and dependent' of one another that the

'legislature intended them as a whole.' "  Essentially, defendant seeks to render section 24-1.6(a)(1), (a)(3)(I) unconstitutional by extending the protections afforded by the second amendment to persons under 21 years of age.  We decline to do so.  Instead, we adhere to the "obvious and undeniable conclusion" announced by the *Aguilar* court that "the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection."  *Id.* ¶ 27, 2 N.E.3d 321.  Indeed, the supreme court has recently considered and rejected the same argument defendant now makes to this court.  See *People v. Mosley*, 2015 IL 115872, ¶ 38 ("[N]either subsection (a)(3)(C), nor (a)(3)(I) violates the second amendment rights of *** 18- to 20-year-old persons.").  See also *In re Jordan G.*, 2015 IL 116834, ¶ 25 (citing *Mosley* approvingly for the proposition that "the public carrying of firearms by those persons under 21 years of age is conduct that falls outside the scope of the second amendment").

¶ 56        Accordingly, we reject defendant's constitutional challenge.

¶ 57                                III. CONCLUSION

¶ 58        For the reasons stated, we affirm the trial court's judgment.  As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 59        Affirmed.