# Illinois Official Reports

## Appellate Court

---

### *People v. Rhoades*, 2018 IL App (4th) 160457

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRAVIS D. RHOADES, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-16-0457 |
| Filed | November 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Piatt County, No. 14-CF-2; the Hon. Roger B. Webber, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Rebecca I. Levy, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Dana Rhoades, State's Attorney, of Monticello (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Knecht and Cavanagh concurred in the judgment and opinion. |

**OPINION**

¶ 1    In March 2016, the trial court convicted defendant, Travis D. Rhoades, of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2014) (formerly 720 ILCS 5/12-14.1(a)(1) (West 2010))) and aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2014) (formerly 720 ILCS 5/12-16(d) (West 2010))) after a bench trial. The court sentenced defendant to a mandatory term of natural life in prison for predatory criminal sexual assault pursuant to section 11-1.40(b)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.40(b)(2) (West 2016) (formerly 720 ILCS 5/12-14.1(b)(2) (West 2010))) and a consecutive term of 12 years in prison for aggravated criminal sexual abuse. Defendant appeals, arguing section 11-1.40(b)(2) of the Criminal Code is facially unconstitutional because it mandates a life sentence—the harshest sentence allowed under Illinois law. Defendant argues this violates "the principle of proportionality and the Eighth Amendment's ban on cruel and unusual punishment." We affirm.

¶ 2                              I. BACKGROUND

¶ 3    As defendant is only challenging the constitutionality of section 11-1.40(b)(2) of the Criminal Code (720 ILCS 5/11-1.40(b)(2) (West 2016)) on its face, we need not extensively discuss the facts in this case.

¶ 4    In January 2014, the State charged defendant, who was 39 years old at the time of his trial in March 2016 and well over 17 years old at the time of the charged offenses, with one count of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2014)) for placing his finger in the vagina of a girl who was under 13 years of age at the time of the offense. The charge noted defendant had a prior predatory criminal sexual assault conviction, which made him eligible for a mandatory natural life sentence. The State also charged defendant with one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2014)) for knowingly rubbing the vagina of another teenage girl. The alleged acts in both counts of the information occurred between October 2010 and June 2011.

¶ 5    Defendant's prior conviction for predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1), (b)(1) (West 1998)) was in 1998 for an assault on a 12-year-old girl. *People v. Rhoades*, No. 4-98-0752 (2000) (unpublished order under Illinois Supreme Court Rule 23). In that case, defendant admitted penetrating the vagina of the 12-year-old victim with his finger. Defendant was 19 years old at the time of the prior offense. In the same case, defendant was also convicted of two counts of criminal sexual assault (720 ILCS 5/12-13(a)(1), (b)(1) (West 1998)) for having intercourse with two other teenage girls (one girl was 13 years old and the other was 14 years old). Defendant was in prison until May 2005, first at Shawnee Correctional Center and then at Big Muddy River Correctional Center, where he received in-house sexual offender treatment. The charged offenses in this case occurred after he had received sexual offender treatment while in prison.

¶ 6    In March 2016, the trial court found defendant guilty of both predatory criminal sexual assault and aggravated criminal sexual abuse. In June 2016, the court imposed the statutorily mandated life sentence for predatory criminal sexual assault pursuant to section 11-1.40(b)(2) of the Criminal Code (720 ILCS 5/11-1.40(b)(2) (West 2016)). The court sentenced defendant to a 12-year consecutive sentence for aggravated criminal sexual abuse.

¶ 7        This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9        Because Illinois has abolished the death penalty, defendant argues section 11-1.40(b)(2) of the Criminal Code (720 ILCS 5/11-1.40(b)(2) (West 2016)) is facially unconstitutional, violating the eighth amendment (U.S. Const., amend. VIII) by mandating the harshest sentence allowed under Illinois law, a natural life sentence, for a non-homicide offense, *i.e.*, predatory criminal sexual assault. Section 11-1.40 states in relevant part:

> "(b) Sentence.

> * * *

> (2) A person who has attained the age of 18 years at the time of the commission of the offense and who is convicted of a second or subsequent offense of predatory criminal sexual assault of a child *** shall be sentenced to a term of natural life imprisonment. The commission of the second or subsequent offense is required to have been after the initial conviction for this paragraph (2) to apply." 720 ILCS 5/11-1.40(b)(2) (West 2016).

Defendant argues the mandatory life sentence violates the principle of proportionality and the eighth amendment's ban on cruel and unusual punishment.

¶ 10       Defendant cites *Graham v. Florida*, 560 U.S. 48, 59 (2010), for the proposition "[t]he concept of proportionality is central to the Eighth Amendment." Further, defendant notes the protections provided by the eighth amendment are viewed less through a historical perspective than according to the evolving standards of what a maturing society deems decent. *Graham*, 560 U.S. at 58. According to defendant, "the calculus involved in sentencing decisions made when the death penalty was still on the books needs to be recalibrated in order to ensure proportionality." Defendant goes on to argue that "[t]o ensure proportionality in sentencing now that Illinois has abolished the death penalty, a mandatory natural life sentence for predatory criminal sexual assault should be prohibited."

¶ 11       It appears defendant would concede his mandatory life sentence in this case would not violate the eighth amendment if Illinois still had the death penalty. However, because Illinois abolished the death penalty, defendant contends the same sentence for the same offense now violates the eighth amendment.

¶ 12       As defendant is challenging the facial validity of the statute under which the trial court sentenced him and not the court's discretion in imposing the sentence, defendant's appeal presents an issue of law, which we review *de novo*. *People v. Miller*, 202 Ill. 2d 328, 335, 781 N.E.2d 300, 305 (2002). Statutes carry the presumption of constitutionality. *People v. Lake*, 2015 IL App (4th) 130072, ¶ 48, 28 N.E.3d 1036. A party challenging the constitutionality of a statute bears the heavy burden of successfully rebutting this strong presumption. *Lake*, 2015 IL App (4th) 130072, ¶ 48. Further, "[c]ourts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of its validity." (Internal quotation marks omitted.) *Lake*, 2015 IL App (4th) 130072, ¶ 48. A statute is unconstitutional on its face only if no circumstances exist where the statute could be validly applied. *People v. Davis*, 2014 IL 115595, ¶ 25, 6 N.E.3d 709.

¶ 13       The eighth amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Defendant

argues his sentence is constitutionally disproportionate under the federal constitution now that Illinois has abolished the death penalty. Conversely, the State argues the federal constitution contains no proportionality protection citing the following language from the United States Supreme Court, "the Eighth Amendment contains no proportionality guarantee" (*Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (opinion of Scalia, J., joined by Rehnquist, C.J.)). However, the State ignores the fact only Justice Scalia and Chief Justice Rehnquist agreed with this statement. Justice Kennedy found the eighth amendment does include at least some proportionality protections and the amendment's proportionality principle applies to noncapital sentences. *Harmelin*, 501 U.S. at 997 (Kennedy, J., concurring in part and concurring in the judgment, joined by O'Connor and Souter, JJ.). Justice Kennedy's concurring opinion in *Harmelin* concerning the eighth amendment's proportionality protections has been recognized as controlling (*Graham*, 560 U.S. at 59-60).

¶ 14      According to Justice Kennedy's opinion, prior decisions of the Supreme Court yielded some "common principles that give content to the uses and limits of proportionality review," including the following: (1) "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts"; (2) "the Eighth Amendment does not mandate adoption of any one penological theory"; (3) "marked divergences both in underlying theories of sentencing and in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure"; and (4) "proportionality review by federal courts should be informed by objective factors to the maximum possible extent." (Internal quotation marks omitted.) *Harmelin*, 501 U.S. at 998-1000 (Kennedy, J., concurring in part and concurring in the judgment, joined by O'Connor and Souter, JJ.). Justice Kennedy noted the principles listed above inform the final principal: "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." (Internal quotation marks omitted.) *Harmelin*, 501 U.S. at 1001.

¶ 15      In *Harmelin*, the petitioner was sentenced to a mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine. *Harmelin*, 501 U.S. at 961 (opinion of Scalia, J.). Justice Kennedy found "[t]he severity of petitioner's crime brings his sentence within the constitutional boundaries established by our prior decisions." *Harmelin*, 501 U.S. at 1004 (Kennedy, J., concurring in part and concurring in the judgment, joined by O'Connor and Souter, JJ.).

¶ 16      The same is true in the case before this court. As in *Harmelin*, the severity of defendant's crime in this case brings the mandatory life sentence he received within established constitutional boundaries. The sentence he received was not grossly disproportionate to the crime he committed. As compared to possessing a large quantity of drugs like the petitioner in *Harmelin*, defendant in this case was convicted of predatory criminal sexual assault committed on a minor who was under 13 years of age at the time of the offense. In addition, defendant had a prior conviction for predatory criminal sexual assault on a different 12-year-old girl. After his first conviction, defendant was in prison at Big Muddy River Correctional Center for "in-house sex offender treatment" until May 2005. His treatment did not dissuade him from committing the same crime after his release when he had access to another young girl.

¶ 17      Defendant's argument the abolishment of the death penalty in Illinois means a mandatory life sentence for a non-homicide offense in Illinois now violates the eighth amendment lacks merit based on Justice Kennedy's controlling opinion in *Harmelin*. In addressing the

- 4 -

petitioner's argument in *Harmelin* that the Supreme Court's prior decisions required "a comparative analysis between petitioner's sentence and sentences imposed for other crimes in Michigan [(where the petitioner was charged)] and sentences imposed for the same crime in other jurisdictions," Justice Kennedy stated:

> "Although *Solem* [*v. Helm*, 463 U.S. 277 (1983),] considered these comparative factors after analyzing 'the gravity of the offense and the harshness of the penalty,' [citation], it did not announce a rigid three-part test. In fact, *Solem* stated that in determining unconstitutional disproportionality, 'no one factor will be dispositive in a given case.' [Citations.]
>
> On the other hand, one factor may be sufficient to determine the constitutionality of a particular sentence. Consistent with its admonition that 'a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate,' [citation], *Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review. The Court stated that 'it *may* be helpful to compare sentences imposed on other criminals in the same jurisdiction,' and that 'courts *may* find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions.' [Citation.] It did not mandate such inquiries.
>
> *A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.* \*\*\*
>
> The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime. \*\*\* In light of the gravity of petitioner's offense, a comparison of his crime with his sentence does not give rise to an inference of gross disproportionality, and comparative analysis of his sentence with others in Michigan and across the Nation need not be performed." (Emphasis added and in original.) *Harmelin*, 501 U.S. at 1004-05.

¶ 18    Accordingly, based on Justice Kennedy's reasoning, our examination of the eighth amendment's proportionality protections begins with looking at whether the crime committed and the sentence imposed leads to an inference of gross disproportionality regardless of the sentences given for other crimes in Illinois or in other jurisdictions. As a result, the fact Illinois no longer imposes the death penalty, making a natural life sentence without the possibility of parole the most severe sentence allowed in Illinois for the most severe and outrageous crime imaginable, does not mean a mandatory life sentence for a less egregious offense than murder should automatically be deemed constitutionally disproportionate. As we stated earlier, defendant's sentence in this case does not lead to an inference of gross disproportionality based on the crime for which he was convicted. As a result, we need not compare the sentence defendant received with the sentence a murderer might receive.

¶ 19    Defendant next asserts his federal proportionality arguments are supported by the Illinois Supreme Court's decision in *People v. Huddleston*, 212 Ill. 2d 107, 816 N.E.2d 322 (2004). We disagree. In *Huddleston*, the court held a mandatory life sentence for a defendant convicted of predatory criminal sexual assault against two or more children did not violate the proportionate penalties clause of our state constitution, which states "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring

- 5 -

the offender to useful citizenship" (Ill. Const. 1970, art. I, § 11). The court noted our state constitution does not require rehabilitative potential to be given greater weight than the seriousness of the offense in determining a proper sentence. *Huddleston*, 212 Ill. 2d at 129. According to the court's opinion:

> "Concern for the welfare and safety of children is reflected in various criminal statutes and procedural enactments based upon the victim's age or youth. Our legislature has created offenses on that basis, elevated or differentiated the classification of existing offenses, allowed for sentence enhancement, and relaxed evidentiary rules. *** The sentencing provision at issue in the instant case was obviously intended to protect this vulnerable segment of our society from sexual predation by deterring would-be offenders and ensuring that those who commit sexual acts with multiple victims will not have the opportunity to reoffend.
>
> ***
>
> Commentators have recognized that, aside from any *physical* injury a child may suffer in a sexual assault, children who are sexually assaulted are subject to chronic *psychological* problems that may be even more pernicious. Sexual assault (rape) has been described as, '[s]hort of homicide, *** the "ultimate violation of self." ' [Citation.] *** Because of their emotional immaturity, children are exceptionally vulnerable to the effects of sexual assault. [Citation.] Long-term follow-up studies with child sexual abuse victims indicate that sexual abuse is ' "grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." ' [Citation.] The child's life may be forever altered by residual problems associated with the event." (Emphases in original.) *Huddleston*, 212 Ill. 2d at 133-35.

¶ 20 Our supreme court has stated the legislature could clearly respond to the reasonable perception sex offenders have a substantial risk to commit additional sex offenses after being released from prison (*Huddleston*, 212 Ill. 2d at 138), which is exactly what happened in the case before us now. Statutes that provide for enhanced classification of sex offenses and/or sentences for those offenses are a common method of protecting children. The chance an offender will commit a sex crime against a child while incarcerated is zero because the offender will have no access to potential victims. Further, the court noted the imposition of lengthy prison sentences on individuals convicted of sex crimes against juveniles might deter other individuals from committing similar acts. *Huddleston*, 212 Ill. 2d at 140.

¶ 21 The supreme court found it could not say the defendant's mandatory natural life sentence in *Huddleston* was "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community" based on the facts in that case. *Huddleston*, 212 Ill. 2d at 141.

¶ 22 We also note our supreme court does not apply a cross-comparison analysis to determine whether a sentence violates the proportionate penalties clause found in our state constitution. According to the court:

> "After much reflection, we have concluded that cross-comparison analysis has proved to be nothing but problematic and unworkable, and that it needs to be abandoned. Those cases that used such an analysis to invalidate a penalty are overruled, and this court will no longer use the proportionate penalties clause to judge a penalty in relation

to the penalty for an offense with different elements." *People v. Sharpe*, 216 Ill. 2d 481, 519, 839 N.E.2d 492, 515-16 (2005).

¶ 23 We further note the mandatory natural life sentence defendant, who was an adult, received does not constitute "unusual" punishment under the eighth amendment. According to the Supreme Court in *Harmelin*:

"Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history. *** There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.' " *Harmelin*, 501 U.S. at 994-95.

¶ 24 The Supreme Court noted it had held "a capital sentence is cruel and unusual under the Eighth Amendment if it is imposed without an individualized determination that that punishment is 'appropriate'—whether or not the sentence is 'grossly disproportionate.' " *Harmelin*, 501 U.S. at 995. However, the Court declined to extend this individualized determination requirement to mandatory life sentences for adults. *Harmelin*, 501 U.S. at 995. As a result, the defendant's mandatory life sentence in *Harmelin* did not constitute a cruel and unusual punishment under the eighth amendment and neither does the mandatory nature of defendant's life sentence in this case.

¶ 25 In closing, we recognize the United States Supreme Court has stated the concept of proportionality central to the eighth amendment is viewed less through a historical perspective but instead according to "the evolving standards of decency that mark the progress of a maturing society." (Internal quotation marks omitted.) *Graham*, 560 U.S. at 58. Further, we acknowledge it may be argued the legislature's decision to abolish the death penalty in even the most heinous murder cases reflects the evolving standards of decency that mark the progress of our maturing society. However, we are not persuaded it logically follows the legislature's decision to leave in place a mandatory life sentence for a sexual predator fails to reflect or in some way offends those same societal standards. Section 11-1.40(b)(2) of the Criminal Code (720 ILCS 5/11-1.40(b)(2) (West 2016)) is not unconstitutional on its face.

¶ 26                                   III. CONCLUSION

¶ 27 For the reasons stated, we affirm defendant's conviction and sentence in this case. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2016).

¶ 28 Affirmed.