2026 IL App (1st) 241139-U

FIFTH DIVISION
May 8, 2026

No. 1-24-1139

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 8101 |
| | ) | |
| MERCEDES AUSTIN, | ) | Honorable |
| | ) | James Brian Novy, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's denial of defendant's motion to suppress and uphold her conviction where the initial detention of the vehicle in which evidence was discovered was supported by reasonable suspicion.

¶ 2    Following a stipulated bench trial, defendant Mercedes Austin was convicted of possession of fraudulent identification (15 ILCS 335/14B(b)(1) (West 2022)) and sentenced to 18 months' probation. Police officers obtained the evidence supporting that conviction during a search that followed an investigative detention. On appeal, Ms. Austin contends that the trial court erred in

denying her motion to suppress the evidence obtained during that search because the investigative detention that uncovered the evidence that gave rise to probable cause for the search was an unreasonable seizure under the fourth amendment. We affirm the trial court's denial of Ms. Austin's motion to suppress and affirm her conviction.

¶ 3                                 I. BACKGROUND

¶ 4      Ms. Austin was charged with seven counts of possession of fraudulent identification after police recovered several fraudulent identification cards in a vehicle in which she had been a passenger. Prior to trial, Ms. Austin filed a motion to suppress the identification cards, arguing that the investigative detention that led to their discovery violated the Fourth and Fourteenth Amendments of the United States Constitution.

¶ 5      At a hearing on the motion, Chicago Police Officer Veronica Islas testified that, on June 14, 2023, she received a dispatch call from the Office of Emergency Management (OEMC) describing a "vehicle involved in retail thefts." The call reported that two individuals had "grabbed some clothes but dropped them before the final point of sale." The dispatch also provided the vehicle's license plate number and that it was a black Nissan with Indiana plates.

¶ 6      Officer Islas testified to seeing the vehicle that had been described in the OEMC dispatch illegally parked at 20 W. Randolph in downtown Chicago. Ms. Austin was the front seat passenger. Officer Islas approached the car and asked the driver for a driver's license. When the driver did not produce one, Officer Islas asked both the driver and Ms. Austin to exit the car. Another officer then alerted Officer Islas that he noticed clothing bearing security tags inside the vehicle. Officer Islas then observed, "in plain view," other security tags in the open portion of the vehicle's door panel. Officer Islas placed Ms. Austin in handcuffs and contacted the Cook County Sheriff's Department to continue the investigation.

2

¶ 7    At one point, Officer Islas testified that the basis for the initial stop was the "dispatch call of a vehicle involved in retail thefts." At another point she replied "correct" when defense counsel asked, "[s]o you conducted the stop because the car was illegally parked?"

¶ 8    Officer Steven Martino of the Cook County Sheriff's Department testified that, upon his arrival, he and another officer searched the car. The officers recovered "proceeds from a retail theft," two "fraudulent IDs" in the trunk, and "a couple" more fraudulent identification cards in a purse, which also contained a prescription bottle of pills bearing Ms. Austin's name.

¶ 9    After Ms. Austin rested, the State made a motion for a directed finding, arguing that the officers had "a lawful reason" to stop and search the vehicle based on the observed traffic violation and the OEMC dispatch. Ms. Austin's counsel countered that the officers lacked a lawful basis to stop the car because the car was not illegally parked and the OEMC call reported only innocent conduct.

¶ 10    The court granted the State's motion for a directed finding on Ms. Austin's motion to suppress. The court ruled that, regardless of whether the car was illegally parked, the OEMC dispatch provided Officer Islas with reasonable suspicion that the occupants of the car described were involved in criminal activity and justified her investigative stop. Ms. Austin subsequently filed a motion to reconsider, which the court denied.

¶ 11    The parties entered into a stipulated bench trial on count one, and the State nol-prossed the remaining counts. The parties stipulated that the testimony from the hearing on the motion to suppress would be considered at the trial. They also stipulated that the fraudulent identification cards found inside the vehicle bore Ms. Austin's photo. The trial court found Ms. Austin guilty of possession of a fraudulent identification card. At the conclusion of trial, Ms. Austin filed a post-trial motion to reconsider, repeating her previous arguments. The trial court denied Ms. Austin's

motion and, following a hearing, sentenced her to 18 months' probation. This appeal follows.

¶ 12                                    II. JURISDICTION

¶ 13    The trial court sentenced Ms. Austin on May 20, 2024, and she timely filed this notice of appeal on that same day. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Jan. 1, 2026), governing appeals from final judgments of conviction in a criminal case.

¶ 14                                    III. ANALYSIS

¶ 15    Ms. Austin contends that the trial court erred in denying her motion to suppress. Specifically, she argues that Officer Islas's investigatory detention of the car that she occupied violated the fourth amendment because the dispatch from OEMC and the officer's mistaken belief that the vehicle was parked in a no-parking zone were insufficient to provide the officer with reasonable suspicion of criminal activity. Ms. Austin argues that she was unlawfully seized and any evidence obtained after the unlawful seizure should have been suppressed and excluded from her trial. Because an order reversing the trial court's ruling on Ms. Austin's motion to suppress would deprive the State of any evidence of Ms. Austin's guilt, she contends her conviction must also be reversed.

¶ 16    The State responds that Officer Islas had reasonable suspicion that Ms. Austin had engaged in unlawful activity, given the OEMC dispatch and the traffic violation she observed. The State argues that the trial court therefore correctly denied Ms. Austin's motion to suppress.

¶ 17    When a defendant moves to suppress evidence, it is her burden to establish a *prima facie* case "that the evidence was obtained by an illegal search or seizure." *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). The burden then shifts to the state to rebut that showing, but "the ultimate

burden of proof remains with the defendant." *Id.* at 307. When reviewing the trial court's ruling on a motion to suppress, we apply a two-part standard of review. *People v. Edwards*, 2020 IL App (1st) 182245, ¶ 19. The court's findings of fact will not be reversed unless they are against the manifest weight of the evidence, but the ultimate ruling on whether the evidence should be suppressed will be reviewed *de novo*. *Id.*

¶ 18    Both the United States and Illinois constitutions protect an individual's right to be free from unreasonable searches and seizures. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. Reasonableness is the touchstone of fourth amendment searches and seizures. *People v. Timmsen*, 2016 IL 118181, ¶ 9. There are three types of police-citizen encounters that do not constitute an unreasonable seizure of an individual: (1) arrests supported by probable cause; (2) brief investigative detentions, known as *Terry* stops, supported by reasonable suspicion of criminal activity; and (3) consensual encounters involving neither coercion nor detention. *People v. Smith*, 2016 IL App (3d) 140648, ¶ 28.

¶ 19    The kind of seizure at issue here is a *Terry* stop, or investigative detention. *Terry* stops must be supported by a reasonable, articulable suspicion of criminal activity. *Id.* To justify a *Terry* stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion is a less exacting standard than probable cause, but it must be based on more than a "hunch or unparticularized suspicion." *In re Elijah W.*, 2017 IL App (1st) 162648, ¶ 36.

¶ 20    An officer's decision to perform a *Terry* stop is based on the totality of the circumstances at the time the stop is initiated. *People v. Hackett*, 2012 IL 111781, ¶ 20. The reasonableness of an officer's decision to conduct a *Terry* stop is a fact-intensive inquiry. *People v. Hubbard*, 341 Ill.

App. 3d 911, 917 (2003). A stop is unconstitutional if reasonable suspicion is lacking, and any evidence obtained from that unlawful stop is generally inadmissible. *People v. Rice*, 2021 IL App (3d) 180549, ¶ 20.

¶ 21    At argument, counsel for Ms. Austin argued that Officer Islas's proffered testimony that she conducted a traffic stop amounted to a concession that the stop began with her approach of the vehicle. While an exact determination of when the stop began, or when mere inquiry became a true *Terry* stop, was not made by the trial court, we will assume it began with Officer Islas's initial approach of the vehicle. Here, Ms. Austin argues that, at the time Officer Islas approached and initiated an investigative stop of the vehicle that Ms. Austin was in, neither purported basis—the suspected traffic violation or the OEMC dispatch—was sufficient to give her reasonable suspicion that criminal activity was occurring or had occurred.

¶ 22    In reference to the traffic violation, Ms. Austin contends that the car could not be illegally parked because Chicago Municipal Code § 9-4-010 (amended July 21, 2021), defines parking as the standing of an unoccupied vehicle, and this vehicle was occupied by both Ms. Austin and the driver. The State counters that Officer Islas's testimony of the vehicle being "parked" relied on common usage of the term, and that, even if Officer Islas was mistaken in believing the vehicle was illegally parked, her objectively reasonable mistake can still support reasonable suspicion.

¶ 23    In reference to the OEMC dispatch, Ms. Austin argues that the information provided did not establish reasonable suspicion that any crime had been committed. Her argument is that all that was reported was that two individuals had dropped some clothes before the final point of sale. This conduct is not a crime and, according to Ms. Austin, "shoppers do this every day." The State counters that the conduct reported provided a sufficient basis to do an investigative stop of the car.

¶ 24    Looking to the totality of the circumstances, we find that Officer Islas had reasonable

6

suspicion to conduct the stop based on the OEMC dispatch. Because of this, like the trial court, we find it unnecessary to determine whether the stop could also be justified based on the Officer's belief that the car was illegally parked.

¶ 25 The OEMC dispatch reported "a vehicle involved in retail thefts" and said that two individuals had "grabbed some clothes but dropped them before the final point of sale." The dispatch described the vehicle and provided its license plate number. Ms. Austin does not dispute that the car she was in was the vehicle described in the dispatch and that, consistent with the dispatch, two people were in that car. What she does dispute is whether the conduct of the car's occupants that was reported in the call provided a basis for reasonable suspicion that those occupants had engaged in criminal activity. We find that it did.

¶ 26 Ms. Austin is mistaken in her insistence that there is no basis for suspecting an attempted retail theft simply because the call never reported that the clothes left the store. As this court has explained, "under the literal terms of the [retail theft] statute, one could commit retail theft by merely picking up an item in a retail store with the intention of taking it, even if he changed his mind almost immediately and replaced the item." *People v. Steele*, 156 Ill. App. 3d 508, 511-512 (1987). Thus, the mere fact that the evidence suggested that Ms. Austin had abandoned any intent to steal before leaving the store, does not mean that this was innocent conduct. *Id.* at 510. As the court made clear in *Steele*, abandonment is simply not a defense to retail theft. *Id.* The report that the two individuals in the car had "grabbed" some clothes and "dropped" them is certainly circumstantial evidence that they had engaged in or were attempting a retail theft.

¶ 27 Further, even if Ms. Austin and the driver of the vehicle had not actually committed the crime of retail theft, the fact that Officer Islas received a dispatch reporting "a vehicle involved in retail thefts" likely provided her with the reasonable articulable suspicion needed to investigate

7

further. In any case, the dispatch provided more details of their behavior in the store, behavior which was suspicious enough to trigger a call to OEMC and a dispatch to officers. . As our supreme court has explained, "innocent behavior frequently provides the necessary reasonable suspicion for a *Terry* stop," when the totality of the circumstances supports it. *People v. Carter*, 2021 IL 125954, ¶ 34. As the court pointed out in *Carter, Terry* itself involved innocent conduct. In that case the United States Supreme Court found the stop to be justified based on the police officer's observation of three men who were "pacing, peering and conferring." *Terry,* 392 U.S. at 6.

¶ 28 The OEMC dispatch reported clothing being "grabbed" and "dropped," which was evidently done in such a way as to arouse suspicion. That suspicion led to the OEMC dispatch. It provided Officer Islas with reasonable basis for suspecting that the individuals associated with the identified vehicle were involved in criminal activity.

¶ 29 Several additional factors buttress the credibility of the call and support a finding of reasonable suspicion. The question of whether a call or tip may provide the basis for reasonable suspicion to justify a *Terry* stop, turns on whether the information provided bears some indicia of reliability. *Adams v. Williams*, 407 U.S. 143, 147 (1972). Factors that support a tip's reliability include whether the tipster claims eyewitness knowledge of criminal activity, whether they reported the activity shortly after it happened, and whether they included a detailed description of the alleged wrongdoing. *Carter*, 2021 IL 125954, ¶ 26. Here, the description of what had been observed in the store, along with a description and license plate number of the associated vehicle provided in OEMC dispatch were indicia of reliability.

¶ 30 Officer Islas's corroboration of details provided in the dispatch further supported the reliability of the allegations that the dispatch reported. *See People v. Thornton*, 2020 IL App (1st) 170753, ¶ 30 (finding that a police officer's corroboration of a 911 caller's report gave rise to the

inference that the caller was credible). When Officer Islas identified a vehicle matching the exact description and license plate number of the car described in the call, she had reason to believe that the call, and its report of criminal activity, were legitimate. The call, which reported two participants in the alleged offense, was further corroborated after Officer Islas approached the vehicle and observed two individuals inside. Accordingly, at the inception of the stop, the anonymous report had been corroborated. This supports the officer's reliance on that call to perform an investigative stop.

¶ 31    Ms. Austin also argues that, because Officer Islas was mistaken in her belief that the vehicle was illegally parked, since it was occupied and therefore not parked, the investigative stop was necessarily illegal. However, regardless of whether the car was "parked" or the mistaken traffic violation was the primary or secondary basis for the stop, the OEMC dispatch provided Officer Islas with an independent basis to have reasonable suspicion to initiate the investigative detention.

¶ 32    As Ms. Austin concedes, if her initial detention was lawful, the officers' subsequent discovery of the clothing with security tags, in plain view, gave them probable cause to search the vehicle. The fraudulent identifications uncovered during that search were, therefore, not inadmissible at trial. Consequently, the trial court correctly denied Ms. Austin's motion to suppress, and we affirm Ms. Austin's conviction for possession of fraudulent identification.

¶ 33                               IV. CONCLUSION

¶ 34    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 35    Affirmed.