2020 IL App (1st) l60707

FOURTH DIVISION
Filing Date November 25, 2020

No. 1-16-0707

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 12 CR 209 |
| BRODERICK RISPER, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Timothy Joseph Joyce, |
| | ) | Judge, Presiding. |

JUSTICE HALL delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a bench trial, defendant Broderick Risper was convicted of predatory criminal sexual assault of a child and sentenced to natural life imprisonment pursuant to section 11-1.40(b)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.40(b)(2) (West 2016)) because this was his second conviction for predatory criminal sexual assault of a child. On appeal, defendant contends that the trial court erred in barring the lay opinion testimony of the victim's mother that the victim was coached and further that, in light of the abolition of the

death penalty in Illinois, section 11-1.40(b)(2) is facially unconstitutional because it mandates the same sentence, life without parole, for a nonhomicide offense as the harshest sentence for the most serious homicide offenses, thus violating the principle of proportionality of sentences and the eighth amendment's ban on cruel and unusual punishment (U.S. Const., amend. VIII). For the reasons that follow, we affirm.

¶ 2                                                  BACKGROUND

¶ 3         According to the evidence presented at trial, 47-year-old defendant sexually assaulted four-year-old N.S.[1] multiple times in 2011, until she reported the abuse to her mother, Jillian K., on December 2, 2011. Defendant was arrested shortly thereafter and indicted for two counts of predatory criminal sexual assault of a child. After a bench trial, defendant was convicted on both counts and sentenced to mandatory natural life imprisonment. As defendant's issues on appeal are confined to the pretrial proceedings, we shall confine our recitation of the facts primarily to those proceedings.

¶ 4                                          A. Pretrial Proceedings

¶ 5         Prior to trial, the State moved to admit other crimes evidence pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-7.3 (West 2012)). In its motion, the State argued that evidence of defendant's sexual assault of five other victims was admissible to prove that he had a propensity to commit sexual assaults. The State also sought to admit evidence of outcry statements N.S. made to a social worker and an aunt.

---

[1]The trial record contains a number of contradictory monikers and spellings; we will use the following for consistency: N.S. (also identified as L.S.), H.F. (also identified as H.K.), Cherice (also identified as Charice), and tutu (also identified as too-too).

¶ 6        Specifically, with regard to the other crimes evidence, the State sought to introduce evidence of the following: (1) defendant's sexual assault of his ex-girlfriend's daughter C.J. from 1986 when she was 6 years old until she was 13; defendant threatened to kill or impregnate C.J. if she reported the abuse; (2) defendant's physical and sexual assault of K.P., the daughter of another ex-girlfriend, from 1994, when she was 8 years old, until the summer of 1995; he was convicted of predatory criminal sexual assault of K.P. in 1998 and sentenced to 25 years' imprisonment; (3) defendant's digital and oral molestation of 5-year-old H.F. in 2011 (H.F. is the niece of another of defendant's ex-girlfriends and the cousin of the victim in this case); (4) defendant's sexual assault of his 9-year-old cousin T.W. while she was alone with him in his car in 1989; and (5) defendant's sexual assault of his 11-year-old niece J.R. while she was alone with him in his car in 2009.

¶ 7        The trial court partially granted and partially denied the State's motion regarding other crimes evidence, finding that admission of the evidence of all five victim assaults would be more prejudicial that probative. The court indicated that "[a]ny rational thinking individual who heard five incidents would be convicting [defendant] based on the five incidents, and not on the trial or the evidence presented." The trial court granted the State's motion to admit evidence of the crimes involving K.P. and H.F., finding the evidence to be sufficiently reliable.

¶ 8        The trial court also partially granted and partially denied the State's motion regarding prior outcry statements of N.S. that were made to several witnesses in which she identified defendant as the perpetrator of the sexual abuse under section 115-10(b)(1) of the Procedure Code (725 ILCS 5/115-10(b)(1) (West 2012)). Specifically, the State sought to admit two outcry statements that N.S. made to her mother on December 2 and 3, 2011, regarding the abuse, a statement to a social worker, and a statement to her aunt.

¶ 9    Defendant raises an issue on appeal related to Jillian's testimony during the hearing on the motion. At the hearing, Jillian testified that N.S. approached her on December 2, 2011, and said "My tutu hurts," explaining that "tutu" was the word N.S. used to refer to her vagina. When Jillian asked why her vagina hurt, N.S. stated that defendant "put his privacy in her privacy." N.S. repeated these statements to Jillian the following day.

¶ 10   On cross-examination, defense counsel asked Jillian if she believed that N.S. was coached to accuse defendant of her sexual abuse:

"MS. KEENAN [(ASSISTANT PUBLIC DEFENDER)]: Ma'am, you had a conversation with an investigator from the Public Defender's Office on June 13, 2012, is that correct?

JILLIAN K.: Correct.

MS. KEENAN: And during that conversation, isn't it true that you told that investigator *** that your daughter told you that your sister [Cherice] told her to say that [defendant] licked her?

JILLIAN K.: No. ***

MS. KEENAN: What did you say?

JILLIAN K.: That [N.S.] told me that [Cherise] said to say that [defendant] licked [H.F.]. He never licked [N.S.].

MS. KEENAN: When did [N.S.] tell you that?

JILLIAN K.: Maybe in February or March [of 2012]."

¶ 11    On redirect, the State asked Jillian whether the statement N.S. made to her regarding licking was about a separate victim, her cousin H.F., to which Jillian replied "Yes." The State then asked whether that had anything to do with N.S., and Jillian responded that it did not.

¶ 12    At the conclusion of the hearing, the trial court granted the State's motion to admit the out-of-court statements that N.S. made to her mother over defendant's objections. The court also allowed the State to introduce statements N.S. made to a social worker.

¶ 13    Defendant also moved for a competency hearing to determine whether N.S. was competent to testify, asking the trial court to view N.S.'s video recorded victim sensitive interview to determine her competency. The trial court granted defendant's request and subsequently found N.S. competent to testify at trial.

¶ 14    Just prior to trial, on November 11, 2015, the State moved to bar testimony related to the statement that Jillian made to the investigator from the public defender's office that she believed her sister Cherice told N.S. to say that defendant also abused H.F. The State argued that this statement was not only hearsay but was also irrelevant as it did not relate to defendant's abuse of N.S. Defendant argued for admission of the statement, contending that it showed that N.S. was coached to accuse defendant of sexual abuse. The trial court noted that there was no showing that N.S. was coached to accuse defendant of abusing her, only that some other adult in the household tried to get N.S. to say something about defendant having molested another child. The trial court found that there was no coaching going on with respect to the abuse of N.S., and the evidence did not seek to establish that. The trial court then granted the State's motion to bar the statement.

¶ 15    Additionally, defendant made an oral motion to admit evidence at trial of Jillian's opinion that her sister put N.S. up to this because it shed light on N.S.'s credibility. Defendant argued

that Jillian believed that her sister put her up to it because of the statement made regarding her sister telling N.S. to say that defendant also abused H.F.

¶ 16    The trial court noted that beliefs were not admissible and further that even if the victim was questioned as to whether someone put her up to it, the defense would be unable to prove it up; however, it noted that defendant would be allowed to ask because it was a bench trial.

¶ 17                    B. Trial Proceedings

¶ 18    Defendant's bench trial proceeded, with the State presenting live testimony from N.S., who testified that she was born on May 3, 2007, and was eight years old at the time of trial. Her testimony was consistent with her prior outcry statements that defendant penetrated her vaginally with his penis several times before she told her mother that her vagina hurt because of it. The State also presented as a video-record victim sensitive interview (VSI) of N.S. that took place at the Chicago Children's Advocacy Center on December 6, 2011, and live testimony from the victim's brother Marshawn S., Jillian, emergency room physician Dr. Alicia Sanders, and Dr. Marjorie Fujara. Dr. Sanders testified that her medical examination of N.S. indicated multiple abrasions and lesions inside her vagina. The parties stipulated that H.F.'s testimony would be consistent with her testimony from defendant's July 9, 2015, trial for his charges of predatory criminal sexual assault against H.F. The parties also stipulated that K.P.'s testimony would be consistent with her testimony from defendant's July 9, 2015, trial for his charges of predatory criminal sexual assault against H.F. The State also presented a certified copy of defendant's birth certificate, showing his date of birth as April 14, 1964.

¶ 19    Defendant did not testify but entered a stipulation that Assistant State's Attorney (ASA) Tracy Senica would testify that on January 3, 2014, N.S. informed her that the abuse took place in the bedroom and not the bathroom of defendant's apartment.

¶ 20    During closing arguments, defendant argued that because the other outcry victim and Cherice were in the house when the initial outcry was made on December 2, 2011, the circumstances made it unreliable. Defendant also argued that Jillian did not believe N.S.'s outcry because she did not react when N.S. first told her about the abuse.

¶ 21    The trial court stated that it believed N.S. and found that both she and her brother testified in a straightforward manner and they answered questions without thought or hesitation, which indicated that they were telling the truth or endeavoring to tell the truth about an incident that occurred when they were only four and five years old. The court also found that N.S.'s VSI was credible and found it insignificant to her credibility that she testified as to different locations where the abuse occurred. The court also found Jillian to be credible, noting that when N.S. approached her to complain about her pain, Jillian's open-ended question, why does it hurt, elicited the outcry about the abuse. The court found it "challenging" to believe that a four-year-old would make up abuse in response to such an open-ended question. The court also noted the medical findings were consistent with sexual assault, although not conclusive proof of the abuse. The court did not give much weight to H.F.'s testimony to show propensity because of the lack of corroborating evidence but did give weight to K.P.'s testimony, finding that she testified in an forthright manner as an adult about what happened to her as a child. The court found that K.P.'s testimony showed defendant's propensity to commit sexual offenses against female children and be motivated to do so. Defendant was then convicted of both counts of predatory criminal sexual assault of a child.

¶ 22                                C. Posttrial Proceedings

¶ 23    Defendant's motion for new trial was heard on February 2, 2016. In his motion, defendant argued, among other things, that the trial court erred in granting the State's motion to bar

evidence that N.S. reported to her mother that an aunt (Cherice) told her to make allegations against defendant concerning another child. He described this as evidence of possible coaching of N.S. at the time of the "said outcry," and the fact that any coaching of the alleged victim had occurred was relevant regarding her credibility. Defendant also argued that the trial court erred in barring him from eliciting testimony from Jillian about her belief that N.S. was being coached because a child's "sensibility, nature, and character are matters within a mother's personal knowledge and beliefs arrived at regarding the truthfulness of her child in this regard should be relevant and admissible in this type of prosecution."

¶ 24 In response, the State argued that questioning Jillian about her personal belief regarding the truth and veracity of the victim invaded the court's province as trier of fact, that it was up to the trier of fact to determine witness credibility, and as such, Jillian's opinions were inadmissible.

¶ 25 The trial court questioned defendant whether his coaching argument concerned abuse of another child or was it related to the allegations N.S. made regarding him that were the subject of the trial. When defense counsel clarified that there were no allegations of coaching regarding the allegations against defendant in this case, the trial court denied the motion.

¶ 26 On February 11, 2016, the State filed its notice of intent to seek a sentence of natural life for defendant pursuant to section 11-1.40(b)(2) of the Criminal Code (720 ILCS 5/11-1.40(b)(2) (West 2016)) based on his prior 1998 conviction for predatory criminal sexual assault of a child.

¶ 27 During defendant's sentencing hearing, he did not present any evidence in mitigation but argued in allocution that he did not have a fair trial.

¶ 28    The trial court subsequently sentenced defendant to a mandatory natural life sentence as this was his second conviction for predatory criminal sexual assault of a child. This timely appeal followed.

¶ 29                                    ANALYSIS

¶ 30    On appeal, defendant contends that the trial court erred in barring the lay opinion testimony of the victim's mother that the victim was coached and further that, in light of the abolition of the death penalty in Illinois, section 11-1.40(b)(2) (*id.*) is facially unconstitutional because it mandates the same sentence, life without parole, for a nonhomicide offense as the harshest sentence for the most serious homicide offenses, thus violating the principle of proportionality of sentences and the eighth amendment's ban on cruel and unusual punishment (U.S. Const., amend. VIII).

¶ 31              A. Admissibility of Lay Witness Opinion Testimony

¶ 32    Defendant first contends that the trial court improperly barred admissible lay opinion testimony and that he should receive a new trial. Specifically, defendant contends that he was prevented from introducing Jillian's opinion that the four-year-old victim was being coached. He argues that such testimony would have rested on her perceptions of the witness, because it would have helped the factfinder determine whether he committed the charged offense, and did not involve technical knowledge, thus the trial court erred in excluding the evidence. He also asserts that the testimony would have bolstered the already-existing evidence of coaching, the witness had admitted lying shortly after her outcry, and the State could not prove the error harmless.

¶ 33    In contrast, the State contends that the trial court properly barred Jillian's opinion on the credibility of the victim's accusations against defendant as this was improper opinion evidence

involving a determination that could only be made by the trier of fact. The State further asserts that defendant did not have any relevant evidence to substantiate such "opinion testimony" because there was no evidence that N.S. was coached to say that defendant sexually assaulted her, and nothing in the record suggested that Jillian believed N.S. was coached to make those claims. The State claims that defendant's suggestion that Jillian was an "expert" on N.S. was a thinly veiled attempt to attack N.S.'s credibility absent collateral evidence that Cherice coached N.S. to fabricate allegations that defendant abused H.F. and the trial court's decision to exclude the evidence was proper.

¶ 34    Rule 701 of the Illinois Rules of Evidence sets forth the foundational requirements for an "opinion[ ]" or "inference[ ]" offered by a witness who is not testifying as an expert. Ill. R. Evid. 701 (eff. Jan. 1, 2011). First, it must be "rationally based on the perception of the witness." *Id.* This provision simply restates "the general requirement that a witness must have personal knowledge of the matter to testify to it." (Internal quotation marks omitted.) *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 79. The opinion or inference must also be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Ill. R. Evid. 701 (eff. Jan. 1, 2011). Rule 702 sets forth the foundational requirements for expert opinion testimony. See Ill. R. Evid. 702 (eff. Jan. 1, 2011). Neither rule distinguishes between expert and lay witnesses, but rather between expert and lay testimony. *Loggins*, 2019 IL App (1st) 160482, ¶ 82.

¶ 35    Under Illinois law, "the testimony of a lay witness must be confined to statements of fact of which the witness has personal knowledge." (Internal quotation marks omitted.) *People v. McCarter*, 385 Ill. App. 3d 919, 934 (2008); Ill. R. Evid. 602 (eff. Jan. 1, 2011). Such opinion

must be based on his or her personal observations and recollections of concrete facts, not on specialized knowledge. *People v. Jackson*, 2017 IL App (1st) 142879, ¶ 49. The opinion testimony is also improper and prejudicial when it goes to the ultimate question of fact to be decided by the jury. *Id.* It is the factfinder's job to draw inferences from the facts, not the witnesses' job to provide inferences for the jury. *People v. Holveck*, 141 Ill. 2d 84, 106 (1990). Additionally, lay opinion testimony must be relevant to be admissible, like all other evidence. *People v. Owens*, 372 Ill. App. 3d 616, 622 (2007).

¶ 36        The admission of evidence is reviewed under the abuse of discretion standard of review. *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 26. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with the position adopted by the trial court. *Id.*

¶ 37        Here, defendant contends that the trial court improperly excluded opinion testimony from Jillian that N.S. was coached that cast doubt on whether or not he committed the offense. We disagree.

¶ 38        First, we note that during the pretrial proceedings on the State's motion to admit N.S.'s outcry statements, defendant elicited testimony from Jillian that she spoke to an investigator from the public defender's office and indicated that N.S. told her in February or March 2012 that Cherice told her to say that defendant licked H.F. Jillian clarified that N.S. never said that defendant licked her but only that Cherice told her to implicate defendant in an offense about a second victim. In a later motion, defendant sought to admit statements that Jillian made to an investigator that she "believed" that Cherice put N.S. up to this because of the statement N.S. made regarding the other victim. This would not have been proper lay opinion testimony, as it would not have been based on personal knowledge or facts. Defendant attempts to argue that

such testimony was admissible because Jillian had personal knowledge and observations of N.S. because she was her mother. We agree with the State that such argument amounts to an attempt to admit such evidence based on Jillian's "expert" knowledge of N.S. because she is her mother without having her qualified as an expert under Rule 702 and an attempt to attack N.S.'s credibility. This would have been improper.

¶ 39 Moreover, contrary to defendant's assertion, Jillian's belief that her sister coached N.S. to say that he also abused H.F. does not automatically establish that she fabricated her own abuse by defendant. N.S. told her mother twice in December 2011 that defendant abused her, and she repeated those statements to various healthcare workers and a social worker within a few days. The statement regarding H.F. was made several months after N.S. made the initial outcries that defendant abused her, and we fail to see how that would cast doubt on N.S.'s identification of defendant in her own abuse. Nor does defendant's focus on a statement that N.S. made to the interviewer during the video that she previously lied, without more, cast doubt on her identification of defendant. Additionally, such statement was irrelevant to the ultimate issue to be decided in the trial, whether defendant abused N.S., as it concerned a separate victim.

¶ 40 We conclude that the trial court did not abuse its discretion in excluding the statement.

¶ 41   B. Constitutionality of Section 11-1.40(b)(2) of the Criminal Code

¶ 42 Defendant further contends that the mandatory sentencing provision of section 11-1.40(b)(2) of the Criminal Code (720 ILCS 5/11-1.40(b)(2) (West 2016)) is facially unconstitutional because natural life imprisonment is the harshest sentence available in Illinois due to the abolition of the death penalty and violates the principle of proportionality of sentences and the prohibition against cruel and unusual punishment of the eighth amendment (U.S. Const., amend. VIII). He argues that the mandatory sentence, without the trial court being

permitted to consider any of his personal characteristics violates the eighth amendment. Defendant acknowledges that the United States Supreme Court precedent is contrary to his position; however, he argues that the Court's decisions regarding *de facto* life sentences for minors suggests that the Court is turning away from that viewpoint.

¶ 43　　　We begin by noting that defendant's challenge to section 11-1.40(b)(2) is framed solely as a facial constitutional challenge and he does not challenge the validity of that section as it applies to him, as he makes no arguments in support of an as-applied challenge. Additionally, we note that it appears that defendant would concede that his mandatory life sentence would not violate the eighth amendment if Illinois still had the death penalty.

¶ 44　　　The analysis is guided by familiar principles. All statutes carry a strong presumption of constitutionality. *People v. Hollins*, 2012 IL 112754, ¶ 13. Accordingly, this court will uphold statutes whenever reasonably possible, resolving all doubts in favor of their validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). To rebut this presumption, a party challenging a statute must establish clearly that it violates the constitution. *People v. Mosley*, 2015 IL 115872, ¶ 22. On the constitutional issues before us, our review is *de novo*. *Id.*

¶ 45　　　A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to successfully raise because an enactment is facially invalid only if no set of circumstances exist under which it would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity. *Napleton*, 229 Ill. 2d at 306; *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 27.

¶ 46     A statute that is unconstitutional on its face, meaning that no set of circumstances exist under which it would be valid, is void *ab initio*. *Mosley*, 2015 IL 115872, ¶ 55.

¶ 47     The eighth amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII.

¶ 48     Section 11-1.40(b)(2) provides in pertinent part:

"A person who has attained the age of 18 years at the time of the commission of the offense and who is convicted of a second or subsequent offense of predatory criminal sexual assault of a child * * * shall be sentenced to a term of natural life imprisonment. The commission of the second or subsequent offense is required to have been after the initial conviction for this paragraph (2) to apply ***." 720 ILCS 5/11-1.40(b)(2) (West 2016).

¶ 49     We find it relevant that there is no Illinois or United States Supreme Court case that stands for the proposition that a sentencing statute mandating life imprisonment without the possibility of parole for adult defendants without permitting the sentencing court to take into account the defendant's personal characteristics is facially unconstitutional. Nor does defendant cite any. To the contrary, our research has yielded the opposition conclusion, specifically in *People v. Rhoades*, 2018 IL App (4th) 160457, which defendant does not cite, in which this court considered and rejected the exact argument as the one defendant raises in this appeal.

¶ 50     In *Rhoades*, we considered the defendant's facial unconstitutionality challenge to section 11-1.40(b)(2) because the abolition of the death penalty in Illinois made natural life without parole the harshest sentence available for any offense in the state and violated the principles of proportionality and the eighth amendment's ban on cruel and unusual punishment. *Id.* ¶ 1. We concluded that the fact that Illinois no longer imposes the death penalty, thus making a natural

life sentence without the possibility of parole the most severe sentence allowed in Illinois for the most severe and outrageous crime imaginable, does not mean a mandatory life sentence for a less egregious offense than murder should automatically be deemed constitutionally disproportionate. *Id.* ¶ 18. We further stated that the defendant's sentence did not lead to an inference of gross disproportionality based on the crime for which he was convicted, and we did not compare the defendant's sentence with the sentence a murder might receive. *Id.*

¶ 51    Additionally, we found that the defendant's contention that his federal proportionality arguments were supported by our supreme court's decision in *People v. Huddleston*, 212 Ill. 2d 107 (2004), was meritless. *Rhoades*, 2018 IL App (4th) 160457, ¶ 19. We noted that in *Huddleston*, the court held that a mandatory life sentence for a defendant convicted of predatory criminal sexual assault against two or more children did not violate the proportionate penalties clause of our state constitution and that our state constitution did not require rehabilitative potential to be given greater weight than the seriousness of the offense in determining a proper sentence. *Id.* (citing *Huddleston*, 212 Ill. 2d at 129). We found that our supreme court stated that the legislature could clearly respond to the reasonable perception that sex offenders have a substantial risk of committing additional sex offenses after being released from prison, which is precisely what happened in *Rhoades*. *Id.* ¶ 20 (citing *Huddleston*, 212 Ill. 2d at 138). We also determined that statutes that provide for enhanced classification of sex offenses and/or sentences for those offenses are a common method of protecting children; the chance that an offender will commit a crime against a child while incarcerated is zero because the offender will have no access to potential victims. *Id.* Additionally, the imposition of lengthy prison sentences on individuals convicted of sex crimes against children might deter others from committing similar acts. *Id.* (citing *Huddleston*, 212 Ill. 2d at 140). We concluded that

the legislature's decision to leave in place a mandatory life sentence for a sexual predator failed to reflect or in some way offended the same societal standards as the death penalty and found that section 11-1.40(b)(2) was not unconstitutional on its face. *Id.* ¶ 25.

¶ 52        We reach the same result here. As was the case in *Rhoades*, we find that there is nothing in section 11-1.40(b)(2) which would lead us to conclude that it cannot or should not be validly applied to adult defendants without consideration of their personal characteristics. The severity of defendant's crime brings the mandatory life sentence he received within established constitutional boundaries. See *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (the eighth amendment does not require strict proportionality between crime and sentence; rather it forbids only extreme sentences that are grossly disproportionate to the crime). Defendant was convicted of predatory criminal sexual assault of a 4-year-old minor occurring when he was 47 years old. In addition, defendant had a prior conviction in 1998 for predatory criminal sexual assault on a different minor who was eight or nine years old at the time of the offense, and was sentenced to a 25-year prison term. Moreover, the legislature has found fit to mandate a sentence of natural life without the possibility of parole to defendants who have committed the offense of predatory criminal sexual assault of a child after already having been previously convicted of the same offense. 720 ILCS 5/11-1.40(b)(2) (West 2016). The purpose of the statute is clear: to protect children, to prevent recidivism and to serve as a deterrent to similar would-be offenders.

¶ 53        We also reject defendant's argument that this court should review the sentencing schemes of other jurisdictions. While it "may" be helpful, there is no mandate for such inquiry. See *Harmelin*, 501 U.S. at 1004-05.

¶ 54        We conclude, as this court did in 2018 in *Rhoades*, that section 11-1.40(b)(2) of the Criminal Code is not facially unconstitutional.

¶ 55                                 CONCLUSION

¶ 56        For the foregoing reasons, defendant's conviction and sentence are affirmed.

¶ 57        Affirmed.

---

**No. 1-16-0707**

---

| | |
|---|---|
| **Cite as:** | *People v. Risper*, 2020 IL App (1st) 160707 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-208; the Hon. Timothy Joseph Joyce, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and_____, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and_____, Assistant State's Attorneys, of counsel), for the People. |

---