2021 IL App (1st) 192518-U

No. 1-19-2518

Order filed July 22, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 10292 |
| | ) | |
| LUCKY STEEL, | ) | Honorable |
| | ) | Kenneth Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The State proved defendant guilty of unlawful use or possession of a weapon by a felon beyond a reasonable doubt where sufficient evidence showed defendant constructively possessed a firearm. The trial court did not err in overruling defense counsel's objection to speculative testimony or in declining to sentence defendant below the statutory minimum.

¶ 2     Following a bench trial, defendant Lucky Steel was found guilty of four counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2018)).[1] The court merged the counts into one count of UUWF and imposed a sentence of seven years' imprisonment. On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he constructively possessed a firearm, and the trial court erred in overruling counsel's objection to speculative testimony and declining to depart from the statutory sentencing range. We affirm.

¶ 3     Defendant was charged by indictment with UUWF based on possessing a firearm or firearm ammunition on or about his person (counts I-IV) and in his abode (counts V-VIII).

¶ 4     At trial, the State entered stipulations to the foundation of abstracts showing that defendant lacked a Firearm Owners Identification (FOID) card or concealed carry license (CCL), and a certified copy of his 2018 conviction for aggravated unlawful use of a weapon (AUUW).

¶ 5     Illinois Department of Corrections senior parole agent Christina Samuelson testified that her duties include supervising parolees and checking where they are residing and that they do not possess firearms. At approximately 7:30 a.m. on June 29, 2018, Samuelson, with other parole agents, Chicago police officers, and Illinois State Police troopers, checked on defendant at a residence located in Chicago. They knocked on the door of the residence and received no answer, but knew that defendant was present as he was on electronic monitoring. They then telephoned defendant, he answered, and his mother allowed them entry.

¶ 6     As Samuelson entered, she observed defendant exit a door to the right. Someone asked the location of defendant's bedroom, and defendant directed agents to a bedroom down the hall which

---

[1] Throughout the record, defendant's last name appears as both Steel and Steele. We adopt the spelling from the notice of appeal.

contained children's clothing. Samuelson did not enter that bedroom. Samuelson asked defendant where he had come from when she entered, and defendant responded that he was in the basement. Samuelson entered the basement, which contained a living area and two bedrooms. In the bedroom on the right, a man later identified as Cornell Glover slept on a mattress on the floor. There was no clothing or other furniture in the bedroom. Samuelson proceeded to the bedroom on the left. At trial, the following exchange occurred:

> "Q. And what did you locate in the bedroom off to the left?
>
> A. Some of [defendant's] property such as mail, clothing—
>
> [DEFENSE COUNSEL]: Objection, foundation, speculation.
>
> THE COURT: Overruled.
>
> THE WITNESS: (CONTINUING)—and in the closet, a handgun."

¶ 7    The firearm was atop a piece of mail on a shelf in the closet. The mail, which Samuelson identified in court, was addressed to defendant at the residence's address. The residence was a single-family home and Samuelson did not have to use an exterior door to reach the basement, which lacked a kitchen.

¶ 8    On cross-examination, Samuelson testified that the basement door was unlocked. Samuelson did not know whether Glover's eyes were closed as it was dark. Samuelson did not remember if there was a door to the bedroom where she found the firearm, but if there was a door, it was open and nothing obstructed Glover from accessing the room.

¶ 9    The mail addressed to defendant did not specify a floor of the residence. However, Samuelson's parole violation report provided that defendant's host site was the first floor. The mail was stamped September 27, 2017, about nine months before the parole check. Defendant's

and Glover's fingerprints were both on file because they had been recently paroled, but the firearm and its bullets were not tested for fingerprints.

¶ 10    Chicago police officer Adam Burns testified that he assisted the parole check. Inside the residence, a door to the left led to a living room and apartment, and a door to the right led to the basement. Burns observed defendant exit the door on the right. Burns entered the basement, and observed an open area with doors to the left and right. There was no kitchen, and Burns did not recall furniture in the basement common area.

¶ 11    The door to the right led to a bedroom with a mattress on the floor, where Burns encountered Glover. Burns did not remember other furniture or clothing. The bedroom to the left contained a bed, dresser, and men's clothing. Burns observed a revolver on a shelf in the closet. Burns's partner recovered a letter, but Burns could not observe it from his vantage point.

¶ 12    On cross-examination, Burns testified that he did not recover the firearm but observed his partner recover it and remove the bullets.

¶ 13    In rebuttal closing argument, the State argued that the bedroom was defendant's and noted that it contained men's clothing. Following argument, the court found that defendant had constructive possession of the firearm where Samuelson and Burns observed him exit the basement and discovered the firearm in "a bedroom with men's clothing, the defendant's mail, and a loaded weapon on top of the defendant's letter." The court found defendant guilty on counts V-VIII and not guilty on counts I-IV. The court denied defendant's amended motion to reconsider or for a new trial, which argued, *inter alia*, that the court erred in overruling counsel's objection to Samuelson's testimony that she observed defendant's "property such as mail, clothing," and a firearm in the bedroom.

¶ 14　Defendant's presentence investigation report (PSI) reflected that he was 19 years old on the date of the offense and was convicted of AUUW in 2018. Defendant's parents were "sad but supportive." He dropped out of high school due to incarceration, planned to earn his GED, and worked at a construction company until his arrest in a different case.

¶ 15　At the sentencing hearing, the State argued that at the time of defendant's arrest, he was on parole for AUUW, and because of that conviction, the minimum sentence was seven years.

¶ 16　In mitigation, counsel read several letters. Defendant's mother wrote that defendant assisted her and neighbors with chores and helped care for his ill grandmother. Defendant's sister wrote that defendant helped care for his nieces, and the family would provide support when he was released. A neighbor wrote that defendant helped her with chores for free.

¶ 17　Counsel requested a sentence below the minimum range, citing defendant's youth and single prior conviction. Counsel argued that defendant's offense was less dangerous to the public because the firearm was not recovered on his person, in a vehicle, or in public, and that defendant had great rehabilitative potential given his family support, the job which he could resume after his release, and his proximity to earning his GED.

¶ 18　The court announced it considered the factors in aggravation and mitigation, noted defendant was on parole for a firearm case when he was arrested, and stated it had "no doubt" the firearm and bedroom belonged to defendant. The court did not "find sufficient mitigation to warrant a departure," and after merging the counts into count V, imposed the minimum seven-year sentence. Defendant's motion to reconsider sentence was denied.

¶ 19　On appeal, defendant first argues that the State failed to prove his guilt beyond a reasonable doubt. Specifically, defendant contests his possession of the firearm where no one observed him

possessing it, the room in which the firearm was found was accessible to others and may not have been defendant's bedroom, the mail addressed to defendant was nine months old, and no forensic evidence linked him to the firearm.

¶ 20    When a defendant challenges the sufficiency of the evidence, the reviewing court determines whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. We draw all reasonable inferences in favor of the State. *Newton*, 2018 IL 122958, ¶ 24. The trier of fact need not "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt" or disregard inferences which flow normally from the evidence. (Internal quotation marks omitted.) *Newton*, 2018 IL 122958, ¶ 24. Further, it is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *People v. Jackson*, 2020 IL 124112, ¶ 64. Accordingly, the reviewing court will not substitute its judgment for the factfinder's on issues concerning the weight of the evidence or the witnesses' credibility. *Jackson*, 2020 IL 124112, ¶ 64. A conviction will only be reversed if "the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Jackson*, 2020 IL 124112, ¶ 64.

¶ 21    To prove defendant's guilt of UUWF, as charged here, the State had to prove that he possessed a firearm after having been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). Defendant only disputes whether the State proved that he possessed a firearm.

¶ 22    Possession may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Here, the trial court found that defendant had constructive possession of the firearm, which exists

where the defendant knew of the firearm's presence and exercised immediate and exclusive control over where it was found. *People v. Hines*, 2021 IL App (1st) 191378, ¶ 32. "Constructive possession is often proven entirely by circumstantial evidence." *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23.

¶ 23    A defendant has control where he has the intent and capability to maintain control and dominion over contraband. *Hines*, 2021 IL App (1st) 191378, ¶ 32. Control of the location where a weapon is found implies that the defendant possessed the weapon. *Hines*, 2021 IL App (1st) 191378, ¶ 32. Habitation in the premises where contraband is found is sufficient evidence of control to establish constructive possession. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. Knowledge may be inferred from the defendant's acts, declarations, or conduct indicating that he knew the contraband existed in the place it was found. *Jackson*, 2019 IL App (1st) 161745, ¶ 27. Knowledge and possession are factual issues, and the factfinder's conclusions will be undisturbed unless the evidence "is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 25.

¶ 24    Here, Samuelson and Burns executed a parole check at the residence to which defendant was paroled. When they entered the home, Samuelson and Burns observed defendant exit a door from the basement. Defendant indicated that his bedroom was on the first floor, but that bedroom contained only children's clothing. The basement consisted of a vacant living area, a bedroom which was empty besides a mattress on which Glover lay, and a bedroom with a bed, dresser, and men's clothing. On a shelf in the closet of that room, Samuelson discovered a firearm laying on mail addressed to defendant.

¶ 25    The evidence supports an inference that this bedroom was defendant's where he was located in the basement around 7:30 a.m., the firearm was laying on mail addressed to him, the bedroom was furnished and contained men's clothing, another man slept in a different room, and the bedroom defendant indicated was his contained only children's clothing. See *Newton*, 2018 IL 122958, ¶ 24 (reviewing court draws all reasonable inferences in favor of prosecution). As a result, defendant's habitation in the bedroom and the firearm's location laying on a piece of mail addressed to him reasonably lead to an inference that he controlled the area where the firearm was found and he was aware of its existence. This evidence is not so unreasonable, unsatisfactory, or improbable to reverse the trial court's finding of guilt.

¶ 26    Defendant argues that the mail was postmarked nine months before the date of the parole check, that he could have shared the upstairs bedroom with a child, and that it was never shown that the men's clothing in the downstairs bedroom belonged to him. Moreover, defendant posits that no forensic evidence linked him to the firearm, Samuelson's report showed that defendant was paroled to the first floor of the residence, and that Glover had the opportunity to place the firearm in the closet before the agents proceeded downstairs. However, the trier of fact need not decide all explanations consistent with innocence to the level of reasonable doubt (*Newton*, 2018 IL 122958, ¶ 24) and we will not substitute our judgment for the trier of fact on those issues as they involve weighing the evidence and determining credibility issues (*Jackson*, 2020 IL 124112, ¶ 64). Further, while defendant points out that he was likely in jail for his AUUW offense on the date the mail arrived and therefore may not have placed the letter on the shelf, the same facts suggest that, if someone else placed the letter there, they did so as it was defendant's bedroom. Moreover, even if Glover had access to the firearm, "[c]onstructive possession is not diminished by evidence of

others' access to contraband." *Jackson*, 2019 IL App (1st) 161745, ¶ 27. Thus, the evidence was sufficient to sustain defendant's conviction.

¶ 27    Defendant next argues that the trial court erred in overruling defense counsel's objection to Samuelson's testimony that the bedroom contained "[defendant's] property such as mail, clothing," and "in the closet, a handgun." Defendant contends that the testimony was speculative and lacked foundation where Samuelson did not testify that she was familiar with defendant's clothing and the clothing did not indicate it belonged to defendant.

¶ 28    The State responds that Samuelson meant the bedroom contained defendant's mail, along with men's clothing and a firearm, not that everything in the bedroom belonged to defendant. The State further argues that any error in overruling the testimony was harmless.

¶ 29    Initially, however, the parties dispute the appropriate standard of review. Defendant contends that our review is *de novo* because the testimony's admission was based upon the court's interpretation of the law. See *Petre v. Kucich*, 331 Ill. App. 3d 935, 941 (2002) (applying *de novo* review where relevant facts were undisputed and decision turned on trial court's interpretation of case law). The State responds that the appropriate standard is abuse of discretion. See *People v. Colon*, 2018 IL App (1st) 160120, ¶ 12 (admission of evidence is generally within sound discretion of trial court and will not be disturbed absent abuse of discretion). Here, where the interpretation of Samuelson's testimony and defendant's habitation in the bedroom are disputed, we review for an abuse of discretion. A court abuses its discretion only where its ruling is so arbitrary, fanciful, or unreasonable that no reasonable person would agree with it. *Colon*, 2018 IL App (1st) 160120, ¶ 12.

¶ 30    "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Ill. R. Evid. 602 (eff. Jan. 1, 2011). The factfinder must draw inferences from the facts, and the witness should not provide inferences for the factfinder. *People v. Risper*, 2020 IL App (1st) 160707, ¶ 35.

¶ 31    Defendant argues that Samuelson's testimony regarding his property needed to be authenticated. See Ill. R. Evid. 901 (eff. Jan. 1, 2011). The authentication requirement, however, applies to documentary evidence, and is therefore inapplicable here, where the disputed evidence is not documentary.

¶ 32    As the State notes, the trial court observed Samuelson's testimony and heard the pattern of her speech, and was therefore better suited than this court to determine whether Samuelson meant that she observed defendant's mail, defendant's property, and defendant's firearm, or that she observed mail belonging to defendant along with someone's clothing and a firearm. We find that the objection should have been sustained because it lacked an adequate foundation. *Risper*, 2020 IL App (1st) 160707, ¶¶ 34-35. However, the trial court's error was harmless.

¶ 33    An evidentiary error is harmless if there is no reasonable probability that the verdict would have been different were the evidence excluded. *People v. Rodriguez*, 2012 IL App (1st) 072758-B, ¶ 53. When determining whether error is harmless, we may " '(1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence.' " *Rodriguez*, 2012 IL App (1st) 072758-B, ¶ 53 (quoting *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008)).

¶ 34    Here, we find no reasonable probability that the trial court's finding would have differed if Samuelson's statement was excluded. In closing arguments, the State referred to the clothing in the bedroom as men's clothing, not defendant's clothing, and in announcing the verdict, the court stated that the bedroom contained "men's clothing, the defendant's mail, and a loaded weapon on top of the defendant's letter." It is clear, therefore, that the trial court's determination that defendant possessed the firearm came not from an interpretation of Samuelson's statement that the clothing or the firearm belonged to defendant, but on the inferences drawn from defendant's presence in the basement and the men's clothing and mail addressed to defendant in the bedroom.

¶ 35    Defendant compares this case to *People v. Watkins*, 2015 IL App (3d) 120882, and *People v. Pulliam*, 176 Ill. 2d 261, 276-77 (1997). In *Watkins*, three cell phones were found in or near a drawer with narcotics. *Watkins*, 2015 IL App (3d) 120882, ¶ 11. Photographs of text messages on one of the phones, which referenced drug deals and included the defendant's first name, were admitted in evidence and published to the jury. *Watkins*, 2015 IL App (3d) 120882, ¶¶ 21-23. A jury found the defendant guilty of possession of a controlled substance with intent to deliver and possession of a controlled substance. *Watkins*, 2015 IL App (3d) 120882, ¶ 29. We reversed when the State failed to authenticate the text messages as being sent to the defendant where there were no cell phone records, eyewitness testimony, or identifying marks linking the phone to the defendant, and the contents of the messages "went to the very heart" of the charge. *Watkins*, 2015 IL App (3d) 120882, ¶¶ 38-39.

¶ 36    In *Pulliam*, the defendant was convicted of first degree murder, aggravated criminal sexual assault, and aggravated kidnaping. *Pulliam*, 176 Ill. 2d at 268. At trial, the State admitted and published to the jury the cover of a book titled "The Force of Sex," found on the defendant's coffee

table two days after the murder. *Pulliam*, 176 Ill. 2d at 275-76. Our supreme court found that the admission of the book was error as no testimony showed that the defendant owned or had read the book, or explained the book's content. *Pulliam*, 176 Ill. 2d at 276-77. However, again the error was harmless because there was sufficient evidence of the defendant's guilt notwithstanding the error. *Pulliam*, 176 Ill. 2d at 277.

¶ 37    First, we note that both *Watkins* and *Pulliam* involved documentary evidence which the State was required to authenticate, unlike Samuelson's testimony, which was an opinion. Further, as discussed, the State and court both referred to the clothing in the closet as men's clothing, not defendant's clothing, and Burns also testified that the bedroom contained men's clothing. Thus, defendant's comparisons to *Watkins* and *Pulliam* are unavailing, and any error in overruling defense counsel's objection was harmless.

¶ 38    Last, defendant argues that the trial court abused its discretion by not imposing a sentence below the applicable range because he was only 19 years old, had strong rehabilitative potential given his education, supportive family, and employment opportunity, and the firearm was found in a closet and therefore did not endanger the public. Defendant further argues that the legislative history of the applicable sentencing statute, including a sunset clause, shows concern over "potentially draconian" sentences.

¶ 39    Sentencing courts must balance the seriousness of the offense with the objective of restoring the defendant to useful citizenship. Ill. Const. 1970, art. I, § 11. Because the sentencing court is better positioned to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age, a reviewing court affords the sentencing court substantial deference and will not modify a sentence absent an abuse of discretion. *People v.*

*Snyder*, 2011 IL 111382, ¶ 36. A sentencing court abuses its discretion where the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Snyder*, 2011 IL 111382, ¶ 36. Further, the reviewing court will not substitute its judgment for the sentencing court's simply because it would have balanced the factors differently. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). Sentences within statutorily-mandated guidelines are presumptively proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Absent evidence to the contrary, a reviewing court presumes that the trial court considered the mitigating factors before it. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010).

¶ 40    Defendant was found guilty of UUWF (720 ILCS 5/24-1.1(a) (West 2018)) after previously being convicted of AUUW. Defendant was therefore subject to a range of 7 to 14 years' imprisonment because his AUUW conviction was a qualifying predicate offense under section 5-4.5-110 of the Unified Code of Corrections (730 ILCS 5/5-4.5-110(a)(A), (c)(1) (West 2018)). Accordingly, defendant's seven-year sentence is presumptively proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 41    Defendant notes that the court could have departed from the sentencing guidelines if it found "substantial and compelling justification" that a within-guidelines sentence would be unduly harsh and a different sentence would comport with public safety and not deprecate the seriousness of the offense. 730 ILCS 5/5-4.5-110(d)(1) (West 2018). In considering whether to depart from the guidelines range, a court must consider factors such as the defendant's age, immaturity, or limited mental capacity; the time between the qualifying predicate offense and the instant offense; the nature and circumstances of the offense; and whether departure is in the interest of the defendant's rehabilitation. See 730 ILCS 5/5-4.5-110(d)(2) (West 2018).

¶ 42    We find that the court did not abuse its discretion in declining to depart from the statutorily-mandated guidelines and sentencing defendant to the minimum term. At the sentencing hearing, defense counsel argued that defendant was only 19 years old, would quickly earn his GED while incarcerated, and could resume his construction job after his incarceration, and presented letters from defendant's family and neighbor. The court announced that it had considered the factors in mitigation and did not find sufficient justification to depart from the guidelines range. See *Flores*, 404 Ill. App. 3d at 158 (absent contrary evidence, reviewing court presumes trial court considered mitigating evidence before it).

¶ 43    Regarding his age and rehabilitative potential, defendant cites studies concluding that a person's brain is not fully developed until their twenties and that longer sentences may be less effective at rehabilitating defendants than short sentences. Because that research was not presented to the trial court at sentencing, we may not consider it. *People v. Mehlberg*, 249 Ill. App. 3d 499, 531-32 (1993). Nevertheless, defendant further notes that Illinois cases and statutes have distinguished offenders who are younger than 21 years old at the time of their offenses. See, *e.g.*, *People v. Minniefield*, 2020 IL App (1st) 170541, ¶¶ 39-42 (noting that persons between 18 and 21 years of age may still be legally considered minors and detailing certain benefits and prohibitions for those under 21 years old). However, defendant's arguments on appeal that his age and rehabilitative potential warranted a downward departure are a request that we reweigh the sentencing factors, which we will not do. *Alexander*, 239 Ill. 2d at 213.

¶ 44    Further, regarding the nature and circumstances of defendant's offense, defendant notes that the statute he was sentenced under includes a "sunset clause" mandating its repeal in 2023 (730 ILCS 5/5-4.5-110(e) (West 2018)) and contends that his offense is the type the legislature

considered when instituting the sunset clause and allowing the court to depart from the guidelines range.

¶ 45    However, whether to depart from the guidelines range is within the discretion of the sentencing court. See 730 ILCS 5/5-4.5-110(d)(1) (West 2018) ("the court may depart from the sentencing guidelines *** if the court *** finds on the record substantial and compelling justification"). As the trial court noted, defendant committed the instant offense while on parole for his AUUW conviction. Further, defendant signed his mandatory supervised release agreement on March 29, 2018, and committed the instant offense only three months later, on June 29, 2018. See 730 ILCS 5/5-4.5-110(d)(2)(C) (West 2018) (in deciding whether to depart from sentencing guidelines, sentencing court to consider time elapsed since qualifying predicate offense). Accordingly, we conclude that the trial court did not abuse its discretion in sentencing defendant to the minimum guidelines-range sentence.

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 47    Affirmed.